Psy-Ed Corporation & another[1] *vs.* Stanley Klein
& another[2]; David Hirsch & others,[3] third-party defendants
(and a companion case[4]).

Middlesex. January 3, 2011. - May 12, 2011.

Present: Ireland, C.J., Spina, Cordy, & Botsford, JJ.

*Employment,* Termination. *Anti-Discrimination Law,* Termination of
employment. *Employment,* Retaliation. *Abuse of Process. Contract,* Interfer-
ence with contractual relations. *Consumer Protection Act,* Businessman's
claim. *Damages,* Emotional distress, Attorney's fees.

Discussion of G. L. c. 151B, § 4 (4) and (4A), which prohibits retaliation and
adverse employment actions, and of the limits that State and Federal
constitutional rights to seek judicial resolution of disputes impose on the
scope of the statute in circumstances in which the filing of a lawsuit is the
alleged retaliatory act. [706-708, 709-710]
In a civil action, the judge, in determining that a former employee had
established a claim of retaliation by her employer in violation of G. L.
c. 151B, § 4 (4) and (4A), properly concluded that the employee had
engaged in legally protected conduct in bringing a claim of discrimination
in employment before the Massachusetts Commission Against Discrimina-
tion (commission), that the civil action that the employer and an officer
and director of the employer brought against the employee was an adverse
employment action that was baseless, that there was a causal connection
between the protected conduct and the adverse action, and that the employee
acted reasonably and in good faith in believing that she had suffered
discrimination and reasonably responded to that belief by filing a complaint
with the commission. [710-712]
In a civil action in which a former employee brought a counterclaim against
his former employer for retaliation in violation of G. L. c. 151B, § 4 (4)
and (4A), the judge erred in granting summary judgment in favor of the
employer, on the ground that the retaliatory acts alleged occurred more
than two years after the employment relationship between the two parties
had been terminated, where a person need not be a current employee to
enjoy the protection of the statute. [708-709, 712-713]
This court vacated a judgment in a civil action in favor of two former employees
on counterclaims alleging abuse of process against their former employer
and an officer and director of the employer, where the judge erroneously

[1]Joseph Valenzano, Jr.
[2]Kimberly Schive.
[3]Robert Striano, Donald S. Chadwick, and C. Kenneth Mehrling.
[4]Stanley D. Klein *vs.* Psy-Ed Corporation & another.

relied on the standard for the separate tort of malicious prosecution and, with respect to one employee, did not indicate whether he adopted or rejected the employee's position that the employer and the officer and director brought a lawsuit against her in order to gain a collateral advantage, i.e., to discourage her from pursuing her claims before the Massachusetts Commission Against Discrimination, to distract her from those claims and impose legal costs on her, and to induce her to abandon those claims [713-715]; and where, with respect to the other employee, the judge's findings did not clearly identify what, if any, ulterior purpose and collateral advantage the employer and the officer and director sought in bringing suit against the employee [715].

This court vacated a judgment in a civil action in favor of a former employee on a counterclaim of tortious interference with his contract with his former employer, brought against an executive officer and director of the employer, where the judge made no findings on the issue whether the officer and director induced the employer to commit a breach of a contract (a promissory note) to which the officer and director was not himself a party, nor on the antecedent issue whether the vote by the board of directors of the employer (board) to suspend payments on the promissory note caused the employer to commit a breach of the contract [715-718]; further, this court reversed the judgment in favor of the former employee on his claim against the other board members for tortious interference with his contract with the employer, where the former employee failed to demonstrate actual malice [718-719].

In a civil action, the judge did not err in concluding that a former employee had not established a claim of a violation of G. L. c. 93A, § 11, against his former employer, a director and officer of the employer, and members of the board of directors (board) of the employer, where the dispute arose out of a private transaction between the board and the former employee in his role as an employee and shareholder of the company, a context in which they were operating as a single business enterprise. [719-720]

In a civil action, the judge erred in dismissing the counterclaims of the defendants, an employer and an officer and director of the employer, against a former employee, on the ground that the defendants' efforts to amend a complaint they had filed in a separate, earlier action against the former employee to raise the same claims had been denied as untimely, where the defendants' counterclaims were not so closely connected to the claims in their own, earlier complaint as to be derivative of that pending action. [720]

In a civil action in which a judge other than the trial judge held a posttrial, non-evidentiary hearing to determine damages on the successful counterclaims of two parties, the second judge acted within her discretion in her award of damages to one of the parties for emotional distress [720-721]; however, she erred in declining to hold at least a limited evidentiary hearing on the issue of attorney's fees [722].

CIVIL ACTIONS commenced in the Superior Court Department on December 17, 1999, and December 12, 2002.

Following consolidation, the case was heard by *Julian T.*

*Houston*, J., and a hearing on damages was had before *Sandra L. Hamlin*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey S. Robbins* (*A.W. Phinney, III*, with him) for Psy-Ed Corporation & another.

*Donna M. Brewer* for David Hirsch & others.

*Kurt S. Kusiak* (*A. Hether Cahill* with him) for C. Kenneth Mehrling.

*George P. Field* for Stanley D. Klein.

*Dahlia C. Rudavsky* (*Kevin C. Merritt* with her) for Kimberly Schive.

The following submitted briefs for amici curiae:

*Jack F. St. Clair* for International Committee Against Mental Illness & others.

*Anne L. Josephson, Heidi S. Alexander, & Nina Joan Kimball* for Charles Hamilton Houston Institute for Race and Justice & others.

*Robert S. Mantell, Elizabeth A. Rodgers, Sara Smolik, & Tara M. Swartz* for Massachusetts Employment Lawyers Association.

*Simone R. Liebman & Catherine Ziehl* for Massachusetts Commission Against Discrimination.

BOTSFORD, J. This case involves bitter litigation spanning more than a decade. It raises the question, among others, whether actions taken by an employer against a former employee may violate G. L. c. 151B, § 4 (4) and (4A), sections of the anti-discrimination law that respectively prohibit retaliation and interference with a protected right. On this question, we conclude that an employer or other person may be liable to a former employee under these sections for retaliatory or interfering conduct that occurs after the employment relationship has terminated. We defer all discussion of the additional issues raised until later in this opinion.[5]

---

[5]We acknowledge the amicus brief filed by the International Committee Against Mental Illness, Voice of the Retarded, the American Academy of Developmental Medicine and Dentistry, the Foundation for Innovation in Medicine, the Colleen Giblin Foundation, and the Brain Research Laboratory at New York University School of Medicine; the amicus brief filed by the

1. *Background.* a. *Introduction.* Before us are cross appeals from judgments in two actions in the Superior Court. The first was brought in 1999 by Psy-Ed Corporation (Psy-Ed, or company) and Joseph Valenzano, Jr., against Dr. Stanley Klein and Kimberly Schive. Klein brought the second action in 2002 against Valenzano and Psy-Ed, setting out a claim of retaliation. The two actions were consolidated prior to trial, which took place in 2006. We summarize first the facts as the trial judge found them, followed by a summary of the procedural history of the two actions. We reserve for later discussion the posttrial proceedings.

b. *Facts.* Klein, Maxwell Schleifer, and a third man founded Psy-Ed in 1969. In 1971, Psy-Ed began publishing Exceptional Parent (EP), a magazine for families of children with disabilities and special health care needs; Klein and Schleifer served as copublishers. In the early 1990s, Psy-Ed began to have financial problems, and in 1993, Valenzano was approached to evaluate Psy-Ed as an investment opportunity. He decided to invest, and brought in about forty other investors. In the resulting restructuring of the company, Psy-Ed bought Schleifer's shares, Klein remained with the company and became editor-in-chief of EP, Valenzano joined Psy-Ed as president, chief executive officer, a member of the company's board of directors (board), and publisher, and the company opened a second office in New Jersey in addition to its original Massachusetts office. At various times after 1993, the third-party defendants, Kenneth Rossano, Dr. David Hirsch, Robert Striano, Donald S. Chadwick, and Robert K. Hopkins, served as members of the board. During Klein's employment as editor-in-chief, there were disagreements between him and the board.

From 1993 until 1996, Schive worked for Psy-Ed in the Massachusetts office, first as an assistant editor of EP and later as associate editor. Schive, who is deaf, required certain accommodations to be provided by her employer, including an inter-

Charles Hamilton Houston Institute for Race and Justice, Fair Employment Project, Inc., the Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association, Massachusetts Law Reform Institute, and the Union of Minority Neighborhoods; the amicus brief filed by the Massachusetts Employment Lawyers Association; and the amicus brief filed by the Massachusetts Commission Against Discrimination.

preter at meetings. On several occasions, she was not provided an interpreter at meetings, and she perceived Valenzano to be impatient and angry at questions she asked while attempting to follow the discussion. In the summer of 1996, during the restructuring process initiated by Valenzano's new management team, certain functions were moved to New Jersey, and Schive was told she would continue to have a role at Psy-Ed. However, she was offered only a three-month position as a part-time consultant, and thereafter she no longer worked for the company.[6] On February 13, 1997, Schive filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD). On June 13, 1997, at Valenzano's request and despite misgivings of which Valenzano was aware, Klein signed an affidavit generally supportive of Psy-Ed's position in Schive's MCAD matter.

Klein was informed in June, 1997, that his employment contract with Psy-Ed was due to expire on June 30, and that it would not be renewed.[7] Klein still held a twenty-one per cent interest in the company, however, and he proposed an alternative slate of Psy-Ed directors for election at a shareholders' meeting on September 30, 1997. Valenzano, meanwhile, promoted the election of his own preferred slate. Klein's attempt to have Psy-Ed shareholders elect his slate of directors failed at the September shareholder meeting.

His proxy fight lost, Klein entered into negotiations with representatives of Psy-Ed for a complete and permanent separation from the company. Valenzano began negotiating with third-party defendant C. Kenneth Mehrling to arrange financing for the acquisition of Klein's shares. On March 27, 1998, Klein, Psy-Ed, and Valenzano executed a settlement agreement that included a mutual release of all claims (settlement agreement). Under the terms of the settlement agreement, Klein received an initial payment of $45,000 and a promissory note specifying sixteen quarterly payments of $13,797.19, for a total of

[6] Kimberly Schive's brief indicates she declined the offer of the three-month position, while the trial judge's findings of fact suggest she accepted the role. In either event, by the end of 1996, Schive was no longer employed by Psy-Ed Corporation (Psy-Ed, or company).

[7] Stanley Klein continued to work for Psy-Ed until he was terminated on August 18, 1997.

$265,755, while Psy-Ed reacquired all of Klein's shares in the company.[8]

On October 6, 1997, without Valenzano's knowledge and while the negotiations over buying out Klein's Psy-Ed shares were in process, Klein signed a second affidavit in connection with Schive's MCAD charge against Valenzano and Psy-Ed. In his second affidavit, which was filed with the MCAD, Klein stated that after preparing his June, 1997, affidavit, he had become aware of and dissatisfied with the company's response to Schive's charge, as well as the manner in which his earlier affidavit had been characterized in that response. Klein also stated in the second affidavit that after completing the first affidavit, he had been reminded of certain incidents by former members of the Massachusetts staff.[9]

In September, 1999, Valenzano became aware of Klein's second affidavit in the Schive MCAD matter. He became aware as well that a former Psy-Ed sales and marketing contractor, Lawrence Qualiano, also had signed an affidavit in support of Schive's claim. At the next formal meeting of Psy-Ed's board of directors, held on September 30, 1999, the directors[10] addressed the affidavits of Klein and Qualiano. They decided to terminate the company's involvement in an ongoing mediation of Schive's discrimination complaint before the MCAD, and agreed to "litigate this matter aggressively."

On December 2, 1999, the MCAD issued a probable cause determination in Schive's favor on her complaint.[11] On December 17, 1999, Psy-Ed and Valenzano filed a complaint against Klein and Schive in which they alleged defamation, violation of

---

[8]The settlement agreement among Klein, Psy-Ed, and Joseph Valenzano contained the following provision: "[F]or a period of two (2) years from the date [of the settlement agreement], Klein agrees . . . to cooperate with the Company in its investigation and defense of any claims against the Company by Kimberly Schive."

[9]The record reveals that the second affidavit referenced but did not describe incidents in which Valenzano behaved harshly toward Schive.

[10]The meeting was attended by Valenzano, Kenneth Rossano, Chadwick, Mehrling, and Hopkins, all members of Psy-Ed's board of directors (board). During the meeting, however, Hopkins resigned from the board and left the meeting.

[11]In 2003, the MCAD vacated its finding and dismissed Schive's complaint for lack of probable cause. We discuss the MCAD's probable cause determination and later dismissal of the complaint *infra*.

G. L. c. 93A, § 11, civil conspiracy, and tortious interference with contractual and business relations (1999 action).[12] Before serving either defendant, the board met on December 23, 1999, and voted five-to-one to discontinue further payments to Klein under the promissory note attached to the settlement agreement until Klein signed a settlement agreement between Psy-Ed and Qualiano,[13] and until authorized by the board "based on the opinion of Boston counsel and their assessment and evaluation of alternative scenarios and their estimate of legal costs associated with the litigation the company has filed against Stan Klein and Kim Schive."[14] Rossano's was the sole dissenting vote.

*c. Prior proceedings.* As just stated, Psy-Ed and Valenzano filed their action against Klein and Schive in December, 1999. In response, Klein counterclaimed against Psy-Ed and Valenzano and brought a third-party complaint against Rossano and the other members of the board.[15] In his counterclaim and third-party complaint, Klein alleged interference with contractual relations by Valenzano, Rossano, and the other board members. He also alleged abuse of process by Psy-Ed and Valenzano, and violations of G. L. c. 93A, § 11, by Psy-Ed, Valenzano, and the board members.[16] On account of Psy-Ed's 1999 action, Schive

---

[12]The complaint was amended on April 14, 2000; only the amended complaint is relevant to this appeal.

[13]The record does not elucidate Lawrence Qualiano's dispute with Psy-Ed. Psy-Ed and Valenzano's complaint indicates Joseph and Lawrence Qualiano had engaged in conduct that Psy-Ed and Valenzano viewed as "extortionate."

[14]The September 30, 1999, payment was the last that Psy-Ed made on the promissory note.

[15]Klein named as third-party defendants Rossano and the directors of Psy-Ed (other than Valenzano and Rossano) who served after September 1, 1999, later identified as David Hirsch, Robert Striano, Chadwick, and Harry J. Diven, Jr. In 2005, a Superior court judge (motion judge) granted Klein's motion to substitute Hopkins and Mehrling for former board member Diven.

[16]Klein also brought other claims, not argued on appeal, for aiding and abetting abuse of process (against the third-party defendants); breach of fiduciary duty and breach of contract (against Valenzano and the third-party defendants); and negligent misrepresentation, intentional misrepresentation, civil conspiracy, and violation of civil rights pursuant to G. L. c. 12, §§ 11H and 11I (against Psy-Ed, Valenzano, and the third-party defendants). Klein's claims of negligent and intentional misrepresentation were dismissed prior to trial. At trial he did not argue, and apparently waived, his claims of breach of fiduciary duty and breach of contract. The other claims listed here were tried and rejected by the trial judge, but they are not argued on appeal.

filed another complaint with the MCAD on February 17, 2000, asserting a claim of retaliation in violation of G. L. c. 151B against Psy-Ed and Valenzano. Thereafter, as authorized by G. L. c. 151B, § 9, she brought this retaliation claim in the Superior Court as a counterclaim in the 1999 action. At the same time, Schive counterclaimed against Psy-Ed and Valenzano for abuse of process. Psy-Ed and Valenzano moved to amend their complaint in November, 2000, to add an allegation that by executing the settlement agreement without disclosing his second affidavit, Klein fraudulently induced them to enter the settlement agreement. A Superior Court judge (the eventual trial judge) denied Psy-Ed's and Valenzano's motion as untimely under the tracking order applicable to the case.

In 2002, Klein filed a separate complaint against Psy-Ed and Valenzano alleging retaliation in violation of G. L. c. 151B, § 4 (4) and (4A) (§ 4 [4] and [4A]) (2002 action). In response, Psy-Ed and Valenzano counterclaimed, alleging breach of contract and fraud. On December 1, 2003, a Superior Court judge allowed Klein's motion to dismiss the counterclaims because in the 1999 action, Psy-Ed and Valenzano's attempt to add a breach of contract claim had been dismissed as untimely, and the allegation of fraud arose out of the same transaction as the barred breach of contract claim.[17] In April, 2005, a different Superior Court judge (motion judge) entered judgment sua sponte against Klein on his retaliation claims because the alleged conduct had occurred when he was no longer an employee.

By the time of trial, in June, 2006, no claims remained in Psy-Ed's and Valenzano's 1999 action against Schive, and only one claim, for defamation, remained against Klein.[18] The trial judge tried that claim and the remaining counterclaims[19] and

---

[17]In the same ruling, the judge consolidated the actions for trial.

[18]In 2004, Psy-Ed and Valenzano acknowledged they had no proof of money damages to support any of their claims. As a result, and on the ground that G. L. c. 93A, § 11, does not apply to claims arising out of an employment relationship, the motion judge granted summary judgment in Klein's favor on all but one claim against Klein. One claim of defamation survived against Klein because it alleged per se defamation and so did not require proof of money damages. See *Ravnikar* v. *Bogojavlensky*, 438 Mass. 627, 630 (2003). In a parallel decision, a different Superior Court judge dismissed all but one claim of defamation against Schive; in Schive's case, the final defamation claim was resolved in her favor through a later, but still pretrial, ruling.

[19]By the time of trial, the remaining counterclaims were Schive's claims of

third-party claims of Klein and Schive in a jury-waived trial, and thereafter issued findings of fact, rulings of law, and an order of judgment. He rejected Psy-Ed's and Valenzano's claim of defamation.[20] The judge found in favor of Klein on his claim of tortious interference with contractual relations, in favor of Klein and Schive on their respective claims of abuse of process, and in favor of Schive on her retaliation claim. He found against Klein on his remaining claims, including violation of G. L. c. 93A, § 11.[21]

In his order, the trial judge indicated a hearing would be held to determine damages with respect to those counterclaims on which he had found liability. However, the trial judge retired before holding such a hearing. As we explain in more detail below, a different Superior Court judge (posttrial judge) held a nonevidentiary hearing on damages on January 4, 2008. On March 13, 2009, she awarded Klein $125,000 in emotional distress damages in connection with his claims of abuse of process and tortious interference with contractual relations, $124,174.71 plus prejudgment interest in connection with the unpaid principal on the promissory note, $510,960.23 in attorney's fees, and $17,002.50 in costs. The same day, she awarded Schive $125,000 in emotional distress damages, $443,040.95 in attorney's fees, and $20,407.65 in costs. In Schive's case, judgment entered against Psy-Ed and Valenzano, the only defendants named in her counterclaims. All amounts due to Klein, however, were awarded and assessed jointly and severally against Psy-Ed, Valenzano, and four of the six third-party defendants: Hirsch, Striano, Chadwick, and Mehrling.[22]

Before us are multiple appeals. Psy-Ed and Valenzano appeal

retaliation and abuse of process against Psy-Ed and Valenzano, and Klein's claims of interference with contractual relations, abuse of process, aiding and abetting abuse of process, civil conspiracy, and violation of civil rights pursuant to G. L. c. 12, §§ 11H and 11I.

[20]Psy-Ed and Valenzano have not appealed from the adverse ruling on the defamation claim.

[21]Klein does not appeal from the judgments against him on aiding and abetting abuse of process, civil conspiracy, or violation of civil rights.

[22]No judgment entered against Hopkins, who had resigned from the Psy-Ed board at the September 30, 1999, meeting of the board, or against Rossano, who had voted to continue payments on the promissory note at the meeting on December 23, 1999.

from and argue error in the judgments against them on Klein's claims of tortious interference with contractual relations and abuse of process, and on Schive's claims of abuse of process and retaliation. Psy-Ed and Valenzano also argue abuse of discretion or other error of law in the denial of Psy-Ed's and Valenzano's motion to amend the complaint in the 1999 action and in awarding damages without conducting further evidentiary hearings. Hirsch, Chadwick, Striano, and Mehrling appeal from and claim error in the judgments against them on Klein's claim of tortious interference with contractual relations. Finally, Klein appeals and challenges the entry of summary judgment on his claims of retaliation under § 4 (4) and (4A) and the entry of judgment against him on his claim of unfair or deceptive conduct under G. L. c. 93A, § 11.

2. *Retaliation.* a. *Generally.* Both Schive and Klein claim they were the victims of retaliation in violation of G. L. c. 151B.[23] Chapter 151B, however, does not actually use the word "retaliation." Rather, § 4 (4) makes it unlawful for "any person . . . to discharge, expel or otherwise discriminate against any person because he has . . . filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, § 5]," while § 4 (4A) makes it unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter."[24] A claim of retaliation may succeed even if the underlying claim of discrimination fails, provided that in asserting her discrimination claim, the claimant can "prove that [she] reasonably and in good faith

[23]The pertinent provisions in G. L. c. 151B are § 4 (4) and (4A) (respectively, § 4 [4] and [4A]). Klein expressly claimed violations of § 4 (4) and (4A), while Schive claimed "retaliation in violation of G. L. c. 151B."

[24]Courts commonly use "retaliation" as shorthand for the more detailed wordings of antidiscrimination statutes such as § 4 (4) and (4A). See *Bain* v. *Springfield,* 424 Mass. 758, 765 (1997). Although we have described a claim under § 4 as a "retaliation" claim, and one under § 4 (4A) as an "interference" claim, and recognize that they are distinct from one another, see *Sahli* v. *Bull HN Info. Sys., Inc.,* 437 Mass. 696, 700 (2002), the distinction is not relevant in this case. Accordingly, we refer generally to the claims that Klein and Schive raise under these statutes as "retaliation" claims.

believed that the [employer] was engaged in wrongful discrimi-
nation." *Abramian* v. *President & Fellows of Harvard College*,
432 Mass. 107, 121 (2000), quoting *Tate* v. *Department of Mental
Health*, 419 Mass. 356, 364 (1995). In the absence of direct
evidence of a retaliatory motive, to make out a prima facie case
of retaliation, the plaintiff must show that "he engaged in pro-
tected conduct, that he suffered some adverse action, and that 'a
causal connection existed between the protected conduct and the
adverse action.' " *Mole* v. *University of Mass.*, 442 Mass. 582,
591-592 (2004), quoting *Mesnick* v. *General Elec. Co.*, 950 F.2d
816, 827 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). This
causal connection may be inferred, for example, where "adverse
action is taken against a satisfactorily performing employee in the
immediate aftermath of the employer's becoming aware of the
employee's protected activity." *Mole* v. *University of Mass.*, *su-
pra* at 592. However, the employer's desire to retaliate against
the employee must be shown to be a determinative factor in its
decision to take adverse action. *Abramian* v. *President & Fellows
of Harvard College, supra.*

As with the word "retaliation," courts have adopted "adverse
employment actions" as shorthand for the actions of an employer
that may violate § 4 (4) and (4A). See, e.g., *Mole* v. *University
of Mass., supra* at 592 n.14, 594 (defining "adverse actions"
by quoting § 4 [4] and [4A], then relying on shorthand "adverse
employment actions" later in decision). Like "retaliation,"
however, "adverse employment action" appears nowhere in the
statute.[25] See § 4 (4) and (4A). Rather, courts use "adverse em-
ployment action" as a convenient term of reference to the more

_____

[25]This court first used the phrase "adverse employment action" in decisions
in the mid-1990s that looked to Federal law for support in interpreting G. L.
c. 151B. See *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 662 (1996);
*Fairneny* v. *Savogran Co.*, 422 Mass. 469, 473 (1996); *Blare* v. *Husky Injec-
tion Molding Sys. Boston, Inc.*, 419 Mass. 437, 444 (1995). Even as a matter
of Federal law, however, "adverse employment action" is merely shorthand
and is not confined to adverse actions taken directly in the context of an
ongoing employment relationship. See *Burlington N. & Santa Fe Ry.* v. *White*,
548 U.S. 53, 63 (2006) (Federal law recognizes that "employer can effectively
retaliate against an employee by taking actions not directly related to his
employment or by causing him harm *outside* the workplace" [emphasis in
original]); *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 346 (1997) (former as
well as current employees encompassed within meaning of "employees" in
Title VII's prohibition on retaliation).

detailed statutory language when assessing, for example, whether actions taken by employers were substantial enough to have materially disadvantaged an employee, see *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 662-663 (1996), or whether actions of employers were causally related to employees' protected conduct. See, e.g., *Pardo* v. *General Hosp. Corp.*, 446 Mass. 1, 19-20 (2006), quoting *Mole* v. *University of Mass.*, *supra* at 592, 595 (juries may infer retaliation from timing and sequence of "protected activity" and "adverse employment actions"). Cf. *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 505-506 (2001) (discussing causal link required between "discriminatory animus" and adverse employment action).

Perhaps because of the term "adverse employment action," confusion has arisen as to whether conduct challenged as retaliatory must target a current employee in order to fall afoul of § 4 (4) and (4A).[26] We conclude that under the plain meaning of these sections, it need not. Section 4 (4) addresses action taken by "any person" against "any person," while § 4 (4A) concerns actions taken by "any person" against "another person." In neither case does the statute expressly require that an employer-employee relationship exist at the time of the wrongful conduct, or at any other time. In light of the c. 151B's broad remedial purposes, it would be an error to imply such a limitation where the statutory language does not require it. See G. L. c. 151B, § 9 (G. L. c. 151B to be "construed liberally for the accomplishment of its purposes"). Cf. *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 346 (1997) (limiting protections of antiretaliation provision of Title VII, 42 U.S.C. § 2000e-3[a], to current employees would be destructive of a primary statutory purpose: "Maintaining unfettered access to statutory remedial mechanisms"); *Burlington N. & Santa Fe Ry.* v. *White*, 548 U.S. 53, 67 (2006) (to achieve primary purpose, scope of Title VII's antiretaliation provision

---

[26]In the two actions before us, for example, the motion judge granted summary judgment to Psy-Ed and Valenzano on Klein's claim of retaliation because he was no longer an employee at the time of the alleged acts, but the trial judge made a finding that Psy-Ed and Valenzano unlawfully retaliated against Schive even though, like Klein, her employment had terminated prior to the challenged conduct. The Massachusetts Commission Against Discrimination (MCAD), too, has taken inconsistent positions in the course of this case. However, the MCAD, as amicus curiae in this appeal, argues that retaliation is not limited to present employees. We agree.

"extends beyond workplace-related or employment-related retaliatory acts and harm"). For example, where an employer's discriminatory conduct results in an employee's termination, § 4 (4) and (4A) must necessarily expand beyond current employees to have the intended effect of protecting victims of discrimination from suffering further ill treatment as a consequence of exercising their rights under G. L. c. 151B. Cf. *Robinson* v. *Shell Oil Co.*, *supra* (restriction of statutory antiretaliation provision to current and not former employees would undermine Title VII's effectiveness "by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining").

Where the alleged retaliatory act is the filing of a lawsuit, however, the scope of § 4 (4) and (4A) are bounded by State and Federal constitutional rights to seek judicial resolution of disputes. See *Sahli* v. *Bull HN Info. Sys., Inc.*, 437 Mass. 696, 700-701 (2002) (*Sahli*). But the "right to petition is not . . . an absolute right." *Id.* at 702. The filing of "sham" or "baseless" litigation, as distinct from "unsuccessful but reasonably based suits," is not a constitutionally protected right.[27] *Id.* at 702-704. "Sham" litigation, at least in the antitrust context, is litigation that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and also is subjectively motivated by the litigant's desire to use the governmental process — as opposed to its outcome — to influence or harm the target of the litigation. *Id.* at 702-703, quoting *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). This court in *Sahli* concluded that a complaint filed by an employer seeking a declaration of its contractual rights, vis-à-vis an employee, was reasonably based and therefore constitutionally protected in that it had "a legitimate basis in law and fact," and the record lacked "evidence that the employer's purpose [was] other than to stop conduct it reasonably believe[d] violate[d] the terms of the contract." *Sahli*, *supra* at 704-705. See *BE & K Constr. Co.* v. *NLRB*, 536 U.S. 516, 533-534 (2002) (right to petition

[27]We do not suggest that only a "baseless" suit may be retaliatory. A suit that is not entirely baseless may nonetheless be retaliatory if it is not subjectively genuine. See *BE & K Constr. Co.* v. *NLRB*, 536 U.S. 516, 536-537 (2002) (leaving open question whether National Labor Relations Board may declare unlawful unsuccessful, reasonably based actions filed for improper motive).

protects suits that are "subjectively genuine and objectively reasonable").

b. *Schive's claim of retaliation.* In reviewing a judge's decision after a jury-waived trial, "we accept the judge's findings of fact as true unless they are clearly erroneous" but "scrutinize without deference the legal standard which the judge applied to the facts." *Kendall* v. *Selvaggio*, 413 Mass. 619, 620, 621 (1992). With respect to Schive's claim of retaliation, we conclude that the trial judge applied the proper legal standards to the facts, and that his factual findings were not clearly erroneous.

The judge properly outlined the elements of unlawful conduct under § 4 (4). Relying on *Sahli*, 437 Mass. at 702-704, he identified the dividing line between "[b]aseless" or "sham" litigation, which is not protected by the First Amendment to the United States Constitution, and those "reasonably based but unsuccessful lawsuits" that are constitutionally protected and so cannot constitute a violation of § 4 (4) or (4A). He correctly pointed out that, while a causal connection must be established between protected conduct and adverse action, that connection may be shown either directly or by inference. Where the link is inferentially shown by closeness in time between an adverse action and the conduct that apparently triggered it, he stated, the triggering conduct need not be the initial filing of the complaint.

The judge ruled that Schive engaged in legally protected conduct by bringing her discrimination claim with the MCAD. He further ruled that the 1999 action[28] was an "adverse employment action" and that it was "baseless," see *Sahli*, *supra* at 702-704, in that all claims against Schive were dismissed "on

---

[28]Psy-Ed and Valenzano challenge the trial judge's description of the 1999 action as occurring "[s]hortly after" Schive's MCAD filing, because their lawsuit followed the filing of Schive's MCAD complaint by nearly three years. Although the phrase in isolation may seem misleading or even incorrect, the judge went on to state that "several events occurred in rapid succession" in late 1999 that concerned Schive's MCAD case: the mediation session, at which Valenzano first saw Klein's second affidavit; the board's decisions to stop all settlement efforts; and, most significantly, the MCAD's finding of probable cause in relation to Schive's MCAD complaint just two weeks before the 1999 action was filed. We think it clear from the trial judge's ruling that he found causality on the basis of that sequence (and on Valenzano's testimony), not because he considered the passage of three years as short.

the grounds that admissible evidence of damages and actionable defamation was lacking."[29] He found Schive demonstrated the necessary causal link between the protected conduct and the adverse action where, in the judge's view, Valenzano testified at trial that he brought the case to "retry" Schive's MCAD claims,[30] and where the "rapid succession" of events in the fall and winter of 1999 also supported an inference of a causal connection between Schive's MCAD case and the complaint her former employer filed.[31] The trial judge concluded by ruling that "Schive

[29]Just because a claim was dismissed prior to trial does not make it baseless. See *Sahli* v. *Bull HN Info. Sys., Inc.*, 437 Mass. at 703-704. In this case, however, the record supported the trial judge's conclusion that the lawsuit was baseless. Four and one-half years after filing suit, Psy-Ed and Valenzano admitted they had no proof of money damages to offer the court. The trial judge (acting on a pretrial motion) also determined that Psy-Ed and Valenzano's allegations of defamation against Schive were factually without support. The record thus supports the conclusion that the 1999 action, with respect to Schive, was not objectively reasonable. Additionally, we note the incongruity between Valenzano's stated reason at trial for filing the 1999 action — to "bring into one point of justice the unbelieveably frivolous [MCAD] charges" — and the substance of Psy-Ed and Valenzano's allegations in the 1999 action, which related only tangentially to Schive's MCAD claim. The evidence was therefore sufficient for the judge to conclude the 1999 action was also not subjectively genuine.

[30]Psy-Ed and Valenzano dispute this characterization of Valenzano's testimony, because they say it suggests that Schive's MCAD claims had earlier been adjudicated unfavorably to him when in fact the MCAD ultimately dismissed Schive's claims. See note 11, *supra*. We read the trial judge's decision differently. In particular, we understand the judge to have meant that Valenzano's testimony provided direct evidence that he was motivated to file the lawsuit by Schive's conduct in pursuing an MCAD claim (and Klein's conduct in support of Schive). While "retry" may not have been the best word choice, we conclude the judge's findings were not clearly erroneous.

[31]Psy-Ed and Valenzano argue that the trial judge stated a test that seemed to require that Schive raise only an inference of a causal connection between protected conduct and an adverse action, when as a matter of law she was required to make a showing that the protected conduct was a determinative factor in the employer's decision to take the adverse action. See *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 504-506 (2001) (describing causation element of discrimination claim in terms of "determinative cause"). There was no error. It is true that where a plaintiff lacks "direct evidence of a retaliatory motive, [the plaintiff] ha[s] the burden of establishing a prima facie case of retaliation, and, in the wake of the defendants' introduction of nonretaliatory reasons for the various actions taken, the burden of proving that the articulated nonretaliatory reasons were pretext." *Mole* v. *University of Mass.*, 442 Mass. 582, 591 (2004). Timing and sequencing of events may, depending on the facts of a case,

has acted reasonably and in good faith in believing she had suffered discrimination, and reasonably responded to that belief by filing a complaint at MCAD."[32] The judge found, "[b]ased on direct and indirect evidence," that Psy-Ed and Valenzano brought suit "because of her reasonable efforts at MCAD."[33]

c. *Klein's claim of retaliation.* As noted in Part 1 (c), *supra,* the motion judge entered summary judgment on Klein's claim for retaliation on the ground that the retaliatory acts he alleged "occurred over two years after the employment relationship between the parties terminated." Because, as we have concluded,

---

be sufficient to raise an inference of causation, and although that inference may be overcome by the defendant's contrary evidence, see *id.* at 591-593, it also may become the basis of the plaintiff's proof that retaliation was in fact determinative. We read the judge's decision, and particularly his discussion of the evidence that the 1999 action was an adverse employment action, as reflecting his factual and legal determination that Schive had proved her filing with the MCAD was a "determinative" cause behind her employer's initiation of the lawsuit against her.

[32]Psy-Ed and Valenzano dispute that Schive acted reasonably and in good faith. The judge's conclusion is supported by the fact that MCAD made an initial finding of probable cause and by Schive's testimony, which he was entitled to believe, that she was not always provided with an interpreter at meetings and that she perceived Valenzano to be impatient and angry with her efforts to follow the discussion without an interpreter. The judge, as trier of fact, was in a better position than we are to gauge whether Schive acted in good faith. Absent clear error, we defer to his finding.

[33]Psy-Ed's and Valenzano's reliance on *Clark County Sch. Dist.* v. *Breeden,* 532 U.S. 268, 273 (2001) (*Clark County*), is misplaced. The Court noted that the issuance of a right-to-sue letter by the Equal Employment Opportunity Commission is an activity in which the employee plays no role, and therefore it cannot plausibly be considered a protective activity of the employee. *Id.* The Court went on to conclude that although there was no evidence to indicate that the employee's supervisor was aware of the right-to-sue letter, even if one assumed such awareness and further assumed that the supervisor was also aware that the employee had earlier filed her EEOC complaint — which *was* the protected activity — that filing had occurred twenty months before the allegedly adverse employment action occurred. *Id.* at 273-274. Here, in contrast to *Clark County*, the record supports the conclusion that it was Schive's active pursuit of her MCAD claim — including her production of Klein's second affidavit in the fall of 1999 — that triggered Valenzano's angry response in December, 1999. More generally, we think it reasonable to believe that an employer might perceive the issuance of a probable cause finding by the MCAD as an indicator that a discrimination claim was not going to go away, and that an employer at that point may be tempted to retaliate against the employee's continued pursuit of a protected activity. In our view, § 4 (4) and (4A) forbid such a response.

a person need not be a current employee to enjoy the protection of § 4 (4) and (4A), the entry of summary judgment on Klein's claim must be vacated.[34]

3. *Abuse of process.* As noted above, the trial judge found in favor of Klein and Schive on their respective counterclaims of abuse of process, brought in both instances against Psy-Ed and Valenzano. The elements of an abuse of process claim are "that 'process' was used, for an ulterior or illegitimate purpose, resulting in damage." *Millennium Equity Holdings, LLC* v. *Mahlowitz,* 456 Mass. 627, 636 (2010) (*Millennium*). To sustain the claim, "the fact finder must find that process was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.' " *Id.,* quoting *Quaranto* v. *Silverman,* 345 Mass. 423, 426 (1963). Filing a groundless claim is not an element of the tort, but it is relevant, because it may "tend[] to show that the process was used for an ulterior purpose." *Fishman* v. *Brooks,* 396 Mass. 643, 652 (1986). However, the ulterior purpose element is not satisfied merely by a showing that a person commenced litigation knowing it was groundless. *Beecy* v. *Pucciarelli,* 387 Mass. 589, 596 (1982).

Relying on the standard for the separate tort of malicious prosecution laid out in *Beecy* v. *Pucciarelli,* the trial judge erred in this case in equating the ulterior purpose element with an improper motive of vexation, harassment, or annoyance. See *id.* at 594 n.9. In an abuse of process claim, in contrast to a claim for malicious prosecution, such a motive does not alone suffice to show ulterior purpose.[35] Rather, the ulterior purpose must be

---

[34]Contrary to Klein's argument, it does not necessarily follow that because the trial judge concluded that the lawsuit was "baseless" in relation to Schive, see *Sahli,* 437 Mass. at 702-704, the same holds true for Klein. Klein's claim must be remanded for further proceedings.

[35]An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly. See, e.g., *Millennium Equity Holdings, LLC* v. *Mahlowitz,* 456 Mass. 627, 640 (2010) (*Millennium*) (ulterior purpose of suit was to disqualify defendant from serving as divorce attorney to plaintiff's wife); *Gutierrez* v. *Massachusetts Bay Transp. Auth.,* 437 Mass. 396, 408-409 (2002) (evidence police encouraged criminal prosecution to preempt tort and civil rights claims sufficient to put abuse of process claim to jury). Contrast *Ladd* v. *Polidoro,* 424 Mass. 196, 199-200 (1997) (groundless claim and harm to defendant insufficient to show abuse of process, absent showing of ulterior motive).

to gain some collateral advantage.[36] See *Fabre* v. *Walton*, 436 Mass. 517, 519 n.3 (2002), *S.C.*, 441 Mass. 9 (2004), quoting *Vittands* v. *Sudduth*, 49 Mass. App. Ct. 406 (2000) ("More specifically, abuse of process has been described as a 'form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money' "). See also Restatement (Second) of Torts § 682 comment b, at 475 (1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus, the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm").

The trial judge determined that the primary reason, and ulterior motive, for Valenzano's filing the abuse of process claim against Schive was to retaliate for her initiating and pursuing the MCAD proceedings. Immediately before stating this conclusion, the judge quoted Schive's contention that the company and Valenzano brought the lawsuit against her in order to discourage her from pursuing her pending MCAD claims, to distract her from the MCAD claims and impose legal costs on her, and to induce her to abandon her claims. The purpose articulated by Schive qualifies as an effort to obtain a collateral advantage. See *Millennium, supra* at 640, 642 (upholding judgment on abuse of process claim where motive in bringing separate action against attorney was desire to remove attorney as wife's divorce counsel). However, the judge did not indicate whether he was adopting or rejecting Schive's position.[37] When this fact is considered in light of the judge's initial articulation of the incorrect legal standard to apply to an abuse of process claim, we are constrained

---

[36]We do not suggest that the claim must be collateral to the proceeding, but only that it be collateral to the legitimate purposes of the proceeding. It has been compared to extortion, in that the defendant has allegedly tried to exact some advantage by wrongful means. See 2 D.B. Dobbs, Torts § 438, at 1235 (2001 & Supp. 2010).

[37]The parties, not surprisingly, disagree on this point. Schive argues that in context, the judge's decision should be read as adopting her contention, while Valenzano and Psy-Ed assert that simply stating the contention without adopting it does not operate as a finding.

to conclude that the judgment in favor of Schive on the abuse of process claim must be vacated.[38]

With respect to Klein, the judge's findings do not clearly identify what, if any, ulterior purpose and collateral advantage Psy-Ed and Valenzano sought to gain in bringing suit against Klein. The judge stated Valenzano testified that he brought the lawsuit because he "expected to bring into one point of justice the unbelievably frivolous charges of the MCAD complaint against me" and that he "wanted to have some kind of resolution . . . with a man who had essentially defrauded us." The desire to litigate a dispute, by itself, does not translate into an ulterior purpose for bringing the action, even when, as here, many of the claims were groundless. See *Ladd* v. *Polidoro*, 424 Mass. 196, 199-200 (1997). As with Schive, we must vacate the judgment on Klein's abuse of process claim and remand for further review in light of the proper standard for abuse of process.[39]

4. *Tortious interference with contract.* The trial judge found that Valenzano and the members of Psy-Ed's board who were third-party defendants tortiously interfered with Klein's contract with the company. To prevail on a claim of tortious interference with a contract, a plaintiff must establish that "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's

---

[38]We leave to Schive whether to pursue the abuse of process claim on remand, because the damages she has claimed in relation to it — for emotional distress — appear to be identical to those she sought in connection with her retaliation claim. She may only recover once for that emotional distress, and for reasons discussed and to be discussed, we affirm the judgment on Schive's claim of retaliation, including the award of damages. Cf. *Millennium*, 456 Mass. at 644-645 (court declined to consider appellate challenge to judge's adverse ruling on malicious prosecution claim where court affirmed on abuse of process claim against defendants and damages associated with both claims were same).

[39]Although the parties do not raise the issue, we are troubled by the trial judge's conclusion that the harm Klein suffered on account of the claimed abuse of process included the loss of $124,174.71 in principal still owed on the note at the time Psy-Ed stopped payment, plus interest. This harm may form the basis of a breach of contract claim, but we do not see how it resulted in any way from abuse of process.

actions." *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991). Where the defendant is a corporate official acting in the scope of his corporate responsibilities, a plaintiff has a heightened burden of showing the improper motive or means constituted "actual malice," that is, "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Blackstone* v. *Cashman*, 448 Mass. 255, 260-261 (2007) (*Blackstone*), quoting *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 476 (1992).[40] We consider separately Klein's tortious interference claims against Valenzano and against the third-party defendant board members.

a. *Valenzano.* The judge began his analysis of Klein's claim against Valenzano by stating the legal proposition that "a defendant may be liable for his intentional interference with the performance of his own contract with the plaintiff." The judge then concluded that Klein's settlement agreement with Psy-Ed, an agreement to which Valenzano was a party,[41] was a contract, that it included the promissory note between Klein as "Payee" and Psy-Ed as "Maker," and that Valenzano intentionally interfered with the settlement agreement by deciding to suspend payments on the note on account of his personal animus and hostility toward Klein.

The judge's threshold premise — that a party can tortiously interfere with a contract to which he is a party — is an incorrect statement of the law. See *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 476 n.12, 477-478 (2001) (party to contract cannot be held liable for intentional interference with that contract).[42] Accord *Blackstone*, 448 Mass. at 259 n.8.[43] For Valenzano to be held liable for tortious interference, it must be proved

---

[40]Valenzano and the third-party defendants were all officers of the company and acting in those capacities. The actual malice standard applied to their conduct, and therefore Klein had a heightened burden of proving actual malice. See *Weber* v. *Community Teamwork, Inc.*, 434 Mass. 761, 781-782 (2001); *Shea* v. *Emmanuel College*, 425 Mass. 761, 764 (1997). Accord *Blackstone* v. *Cashman*, 448 Mass. 255, 260-261 & n.10 (2007). In his decision, the trial judge misstated the actual malice standard.

[41]The settlement agreement indicates by its terms and by the notarized signatures that Valenzano was a named party to it and signed it in his individual as well as his representative corporate capacities.

[42]For this proposition, the judge cited *Shafir* v. *Steele*, 431 Mass. 365, 368-371 (2000). In that case, we adopted the rule, set out in the Restatement

that there existed a relevant contract to which Valenzano was *not* a party, that Valenzano caused one or more parties to that contract to "break" (i.e., breach) it, that Klein was harmed as a result, and that Valenzano acted with actual malice. *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. at 272. See *Blackstone, supra* at 260-261. Assuming that the promissory note, to which Valenzano was not a party, see note 43, *supra*, was an operative contract independent of the settlement agreement, the note could form the basis of a claim of tortious interference against Valenzano.[44] But for Klein to prevail on his claim, the judge would have had to find that Valenzano induced Psy-Ed's breach of a contract (specifically, the promissory note) with Klein.

The trial judge made no findings on this issue, or on the antecedent issue whether, when Psy-Ed's board voted to suspend payments on the promissory note, this action in fact caused a breach by Psy-Ed of the contract that the note represented.[45] This omission was significant in light of Klein's contractual

(Second) of Torts § 766A (1979), that a defendant may be subject to liability for tortious interference by interfering with the plaintiff's performance of a contract between the plaintiff and a third person. *Id.* at 369. Cf. *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991) (question for jury whether defendant knowingly induced third party to break contract with plaintiff). Nothing in *Shafir* v. *Steele, supra,* indicated a defendant could be liable for tortiously interfering with a contract to which the defendant was a party.

[43]One might conclude, as Psy-Ed and Valenzano argue in their reply brief, that because the judge described the promissory note as included within the settlement agreement, the contracts at issue were so closely connected that Klein's claim of tortious interference with the note must fail as a matter of law because Valenzano was a party to an integrally related contract. Cf. *Chelsea Indus., Inc.* v. *Florence,* 358 Mass. 50, 55-56 (1970) (where contracts are closely interrelated, provisions are not interpreted to operate independently). The judge's findings are not sufficient to support such a result. Although he stated that the settlement agreement "included" the note, he did not examine directly whether Valenzano was thus protected from liability for tortious interference with the note. Weighing against this view is the fact that, as Valenzano agrees, he was not a party to the note and so presumably had no personal liability on the note.

[44]In fact, Klein pleaded his tortious interference claim in this form: his counterclaim identified the note, not the settlement agreement, as the contract with which Valenzano and the third-party defendant board members allegedly interfered.

[45]That Klein brought no breach of contract claim in this case in connection

obligation, under the terms of the settlement agreement, "to cooperate with the Company in its investigation and defense of any claims against the Company by Kimberly Schive." If, as Valenzano and the third-party defendants suggested below and argue on appeal, Klein breached the settlement agreement or fraudulently induced Psy-Ed and Valenzano to enter into it by failing to disclose the second affidavit he had signed in connection with Schive's MCAD matter, Psy-Ed may not have had a legal obligation to make the full payments on the promissory note.[46] See G. L. c. 106, §§ 3-303 (*b*), 3-305 (*a*) (2) (defenses to enforcement of instruments). If that were the case, Valenzano (as well as the third-party defendant board members) could not be liable for tortious interference. Cf. *Harrison* v. *NetCentric Corp.*, 433 Mass. at 478-479 (chief executive officer of corporate employer did not tortiously interfere with plaintiff's employment contract where, under terms of contract, employer was entitled to take action it did).[47] We therefore vacate the judgment against Valenzano on Klein's claim of tortious interference with contract and remand for further proceedings.

b. *Third-party defendants.* The board members who are third-party defendants argue that the trial judge's factual findings reflect the absence of actual malice on the part of all members of the board other than Valenzano. See *Blackstone, supra* at 260-261. We agree.

The judge stated that the board's minutes indicated that the board's decision to stop payment was due to Klein's unwillingness to sign a settlement agreement with Qualiano. The judge

with the note undoubtedly contributed to the difficulty in assessing whether he had the right to enforce the note. Although he filed a breach of contract claim as a counterclaim to the 1999 action, the contract he alleged the members of the board breached was not the note but, instead, their agreement to fulfil their duties as directors of the company.

[46]We make no determination whether Klein entered into the settlement agreement fraudulently, or whether a later breach could form a defense to enforcement of the promissory note. We merely point out that the trial judge should have considered these issues, because in order to decide Klein's tortious interference claim, it was necessary to decide whether Psy-Ed did in fact commit a breach of a contract when it stopped payment on the note. See G. L. c. 106, § 3-305 (*a*) (2).

[47]The trial judge found that the decision to suspend payments was motivated by "personal animus on the part of Valenzano." We think this finding was adequate to show "actual malice" by Valenzano.

describes this reason as constituting "economic coercion" and therefore improper. It is not clear what the judge meant, but in any event, the reason stated in the board's minutes does not suggest "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Id.* at 261, quoting *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 476 (1992).

On appeal, Klein argues that the directors adopted and participated in Valenzano's vengeful campaign. For evidence he cites Rossano's testimony that the board was "adamant" in its decision to discontinue payments on the note; Klein argues that this means the board members failed to manifest objectivity or independence of thought. Klein also states they "flouted" the advice of Rossano, a decision that ultimately exposed the company to litigation expenses greatly in excess of the note's outstanding principal. Even if, as Klein suggests, the board's course of action was ill considered or short sighted, Klein's arguments simply fail to demonstrate "a spiteful, malignant purpose." The judgment against the members of the Psy-Ed board other than Valenzano on Klein's claim for tortious interference with contract cannot stand.

5. *Chapter 93A.* The trial judge found in favor of Valenzano, Psy-Ed, and the third-party defendant board members on Klein's counterclaim alleging a violation of G. L. c. 93A, § 11. Section 11 covers "individuals acting in a business context in their dealings with other business persons and not . . . every commercial transaction whatsoever." *Manning* v. *Zuckerman*, 388 Mass. 8, 10 (1983). It does not provide a remedy for disputes arising out of an employer-employee relationship, see *id.* at 15, or for disputes that "occur within a single company." *Szalla* v. *Locke*, 421 Mass. 448, 451 (1995). The facts as found by the judge adequately support his conclusion that the dispute arose out of a private transaction between the Psy-Ed board and Klein in his role as a former employee and shareholder of the company. Klein's efforts to describe the dispute as commercial in nature are contradicted by the fact that, despite the complex entanglement of the parties in this case, the context in which they were operating was a single business enterprise. See *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 466-467 (1982) (G. L. c. 93A, § 11, intended to apply only to dealings between legally separate "persons" engaged in arm's-length transactions, not to dealings between members of single

legal entity). Contrast *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass.
App. Ct. 407, 416 n.7 (2003) ("distinguishing mark" for G. L.
c. 93A applicability is "interactive business transactions [involv-
ing] independent business entities"). There was no error in the
judge's rejection of Klein's claims under G. L. c. 93A.

6. *Psy-Ed's and Valenzano's counterclaims against Klein.* As
noted previously, after Klein filed his separate action for retal-
iation against Psy-Ed and Valenzano in 2002, his motion to
dismiss Psy-Ed's and Valenzano's counterclaims alleging breach
of contract and fraud was allowed because, in 2001, Psy-Ed's
and Valenzano's efforts to amend their own complaint to raise
these same claims against Klein had been denied as untimely
under the applicable tracking order.

The allowance of Klein's motion to dismiss the counterclaims
was error. The denial in 2001 of the motion to amend Valen-
zano and Psy-Ed's complaint had no bearing on Psy-Ed and
Valenzano's right to bring timely counterclaims to Klein's separ-
ate complaint.[48] See Mass. R. Civ. P. 13 (a), as amended, 423
Mass. 1405 (1996) (pleadings shall state counterclaims arising
out of same transaction or occurrence); Mass. R. Civ. P. 13 (b),
365 Mass. 758 (1974) (pleadings may state other claims against
opposing party). Their counterclaims were not so closely con-
nected to the claims in their own, earlier complaint as to be
derivative of the pending action brought by Psy-Ed and Valen-
zano. See Mass. R. Civ. P. 12 (b) (9), as appearing in 450 Mass.
1403 (2008). See also *Harvard Community Health Plan, Inc.* v.
*Zack*, 33 Mass. App. Ct. 649, 652 (1992) (dismissal under rule
12 [b] [9] may be appropriate if parties and issues are identical
to those in prior pending action). We reverse the grant of Klein's
motion to dismiss Psy-Ed's and Valenzano's claims of breach of
contract and fraud.

7. *Damages.* In his order, the trial judge stated that a hearing
would be held to determine damages on Klein's and Schive's
successful counterclaims. After the trial judge retired, the post-
trial judge held a status conference on March 21, 2007, and a
nonevidentiary hearing January 4, 2008. She awarded damages
on the basis of that conference and hearing and her review of

---

[48]We do not consider whether the denial of the motion to amend represented
an abuse of discretion.

the record, including the findings of the trial judge. The post-trial judge proceeded under Mass. R. Civ. P. 63, 365 Mass. 831 (1974), which allows a different judge to perform duties of the trial judge if the trial judge is unable to do so.[49] We conclude that the award of emotional distress damages to Schive was properly within the posttrial judge's authority to make, but that she erred in her other awards of damages.

a. *Award of damages to Schive for emotional distress.* The posttrial judge awarded Schive damages for emotional distress on the basis of the judge's review of Schive's trial testimony and the trial judge's finding that "Schive credibly testified that she suffered emotional distress on account of [Psy-Ed's] and Valenzano's lawsuit." The posttrial judge detailed the evidence presented at trial concerning Schive's emotional injuries and awarded damages in the amount of $125,000. Where Psy-Ed and Valenzano challenge the award only fleetingly and without any critique of the methodology for calculating the amount,[50] we conclude that the posttrial judge acted within her discretion in this award of damages.[51]

[49]Rule 63 of the Massachusetts Rules of Civil Procedure, 365 Mass. 831 (1974), provides: "If by reason of . . . resignation . . . a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after . . . findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may, on assignment by the Chief Justice of such court, . . . perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

[50]Psy-Ed and Valenzano's statement that the posttrial judge made her assessments of Schive's emotional distress damages "on a cold record and without adequate supporting findings" by the trial judge is controverted by the trial judge's express finding that Schive "credibly testified" to her emotional distress and its causation. Psy-Ed and Valenzano's attempt to incorporate the arguments made in the briefs of third-party defendants also fails. The referenced arguments — that the trial judge made no finding as to Klein's credibility on his emotional distress and that emotional distress damages may be awarded only rarely in tortious interference cases — are not relevant to Schive or to her claim for retaliation damages.

[51]Because emotional distress damages may be awarded where factually appropriate as compensation for retaliation in violation of G. L. c. 151B, see *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303, 315-317 (1976), the award of damages is not affected by our conclusion that the judgment in Schive's favor on her abuse of process claim must be vacated.

b. *Award of damages to Klein.* The posttrial judge awarded Klein $125,000 as damages for emotional distress in connection with his claims of abuse of process and tortious interference with contractual relations. She also awarded him $124,174.71, plus interest since December 31, 1999, as separate damages on the same two claims. Because, for reasons previously discussed, we have concluded that the judgments in favor of Klein on these two claims were in error, we vacate the damage awards that pertain to them.[52]

c. *Attorney's fees.* Psy-Ed and Valenzano contest the posttrial judge's awards of attorney's fees, challenging, among other claimed errors, the lack of an evidentiary hearing. An evidentiary hearing on attorney's fees is not always required, especially when the award of fees is being considered by the judge who presided over the trial. Cf. *Matter of the Estate of King*, 455 Mass. 796, 805-806 (2010). In this case, fees were awarded without an evidentiary hearing by a judge who did not preside at trial, despite some indication at trial and in the trial judge's ruling that a further evidentiary hearing was anticipated. Furthermore, in calculating and adjusting the "lodestar" figure in order to determine Schive's attorney's fees, the posttrial judge relied on the affidavit of an expert witness who did not testify and whom Psy-Ed and Valenzano had no opportunity to cross-examine. In the circumstances, the posttrial judge erred in declining to hold at least a limited evidentiary hearing on the issue of attorney's fees. On remand, the award of attorney's fees to Schive may also need to be adjusted if she does not pursue or in any event does not prevail on her abuse of process claim.

The award of attorney's fees to any party must be tied to specific claims and supported by findings that are adequately supported by the record. With respect to Klein, in light of the conclusions we have reached concerning his substantive claims, we vacate the award of attorney's fees and costs.[53]

8. *Conclusion.* We affirm the decisions with regard to li-

---

[52]In the circumstances, little would be served by reviewing all the claims of error that Valenzano, Psy-Ed, and the third-party defendants advance in connection with the posttrial judge's decision on damages.

[53]For the purposes of Klein's tortious interference claim on remand, we note that a victim of this tort generally may only recover costs incurred in prosecuting his claim against the third party with whom he had a contract, or

ability and damages in favor of Schive on her counterclaim of retaliation against Psy-Ed and Valenzano, but we vacate the judgment on this counterclaim with respect to associated attorney's fees. We also vacate the judgment in favor of Schive on her counterclaim of abuse of process against Psy-Ed and Valenzano.

We vacate the judgments in favor of Klein on his counterclaim of abuse of process against Psy-Ed and Valenzano, and on his counterclaim of tortious interference with contract against Valenzano. We reverse the judgment in favor of Klein on his counterclaim of tortious interference with contractual relations with respect to the third-party defendants. We affirm the judgment in favor of Valenzano, Psy-Ed, and the third-party defendants on Klein's counterclaim alleging a G. L. c. 93A, § 11, violation. We vacate the grant of summary judgment in favor of Psy-Ed and Valenzano on Klein's retaliation claim and the judgment of dismissal with respect to Psy-Ed's and Valenzano's counterclaims against Klein for breach of contract and fraud.

Finally, with the exception of the award to Schive of emotional distress damages, which, as noted above, we affirm, we vacate all other awards of damages, attorney's fees, and costs. We remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

in defending against an action brought by that third party. See *M.F. Roach Co.* v. *Provincetown*, 355 Mass. 731, 732-733 (1969). See *Mailhiot* v. *Liberty Bank & Trust Co.*, 24 Mass. App. Ct. 525, 531-532 (1987) (*Roach* exception applies only where defendant caused plaintiff to be brought into court by third party, or forced to sue third party to enforce contract).