Sonja Sahli *vs.* Bull HN Information Systems, Inc.

Middlesex. May 8, 2002. - September 9, 2002.

Present: Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Anti-Discrimination Law,* Employment, Termination of employment, Age.
*Employment,* Discrimination, Retaliation. *Constitutional Law,* Right to
petition government. *Practice, Civil,* Costs.

This court concluded that a lawsuit filed by a corporate employer against a
former employee, seeking a declaration of its rights, duties, and obligations
under a release and severance agreement entered into with the former
employee, who had lodged a charge of age discrimination against the
employer, did not constitute an act of retaliation or interference in violation
of the Commonwealth's antidiscrimination laws, G. L. c. 151B, § 4 (4), or
G. L. c. 151B, § 4 (4A), where, although the interest in remedying
discrimination was weighty, it was not so weighty as to justify what would
amount to an absolute restriction on the employer's right to petition the
courts, and where the lawsuit had a legitimate basis in law and fact.
[700-707]

In a civil action, the judge properly allowed the prevailing defendant's motion
for costs. [707]

Civil action commenced in the Superior Court Department on
June 30, 1998.

The case was heard by *Nonnie S. Burnes,* J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Justine H. Brousseau* (*Nina Joan Kimball* with her) for the
plaintiff.

*David B. Chaffin* (*Kathleen A. Kelley* with him) for the
defendant.

*Thomas F. Reilly,* Attorney General, *Catherine C. Ziehl &
Kathleen Z. Quill,* Assistant Attorneys General, for the Attorney
General, amicus curiae, submitted a brief.

Cordy, J. In this case, we hold that a lawsuit filed by an
employer against a former employee who has lodged a charge

of discrimination is not an act of retaliation or interference in violation of the State's antidiscrimination laws where the lawsuit had a legitimate basis in law and in fact.

1. *Background.* Sonja Sahli worked in the human resources department of Bull HN Information Systems, Inc. (Bull), for eight years.[1] She was laid off in April, 1995, at age fifty-three.[2] After she was notified about the impending layoff, Sahli applied for, but was not selected to fill, a vacant position in the human resources department. Before she left Bull, Sahli signed a release and severance agreement, in which she agreed to release Bull from any "current or prior claims arising out of [her] employment with or termination from Bull," in exchange for eight weeks of her salary as severance payment.[3]

Several months after leaving Bull, Sahli learned that the person who was hired to fill the vacant position was a younger woman.[4] Believing that she was not chosen to fill the position because of her age, Sahli filed a charge of discrimination with

---

[1] Sahli worked as a manager of relocation, service awards, and employment records.

[2] During the period of Sahli's employment at Bull NH Information Systems, Inc. (Bull), its workforce was substantially reduced. The motion judge found that Bull had 25,000 employees in 1987, and by 2001, its work force had been reduced to 1,300 employees.

[3] The release stated:

"3. *General Release of Claims.* In full consideration and exchange for the severance payments provided for in Paragraph 2, Employee agrees to give up and release forever all the rights that he/she now has to any relief of any kind from Bull and its officers, directors, employees, shareholders, affiliates, and agents, whether or not he/she knows about those rights, arising out of his/her employment with Bull up until the date this Agreement is signed. This includes, but is not limited to, claims or rights under any federal, state or other governmental law, common law, statute, regulation, ordinance or any other legal restrictions including the Age Discrimination in Employment Act, the Civil Rights Acts of 1964 and 1991, the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990, all as amended. THIS MEANS THAT EMPLOYEE MAY NOT SUE BULL FOR ANY CURRENT OR PRIOR CLAIMS ARISING OUT OF HIS/HER EMPLOYMENT WITH OR TERMINATION FROM BULL."

[4] The motion judge found that the person hired for the position was an external candidate who had substantially more educational and relevant experience for the position than Sahli.

the Massachusetts Commission Against Discrimination (MCAD), asserting, inter alia, that:

(1) "Bull's policy and practice in the event of a lay-off is to place a laid-off employee in another vacant position within the company, where possible."

(2) "I was amply qualified for [a vacant position in the human resources department]."

(3) "I heard that Bull had filled the [vacant position] with an outside applicant who was a number of years younger than I was. On information or belief, the person who was hired for the position was less qualified for it than I was."

(4) "I believe that Bull failed to follow its policy and practice in my case of relocating laid-off employees into vacant positions within the company and failed to hire me for the [vacant position] because of my age."

In response to Sahli's MCAD charge, Bull filed a complaint for declaratory relief in the Superior Court alleging that Sahli's discrimination charge was barred by the terms of the release that she had signed when she left Bull. Bull contended that the essence of Sahli's discrimination claim was Bull's failure to relocate her into a vacant position instead of laying her off, and as such, was a claim arising out of her termination. Therefore, Bull asked the court to "declar[e] the parties' respective rights, duties, and obligations under the Release Agreement," find that Sahli's bringing of the discrimination charge violated its terms, and order the return of Sahli's severance payment.

One month after Bull filed its complaint, Sahli filed a second charge of discrimination with the MCAD alleging that Bull's complaint constituted discriminatory retaliation in violation of G. L. c. 151B, § 4 (4) (retaliation claim), and threats, intimidation, coercion, and interference with her protected rights in violation of G. L. c. 151B, § 4 (4A) (interference claim).[5] She also filed a motion to dismiss Bull's complaint in the Superior

---

[5]General Laws c. 151B, § 4 (4), provides that it is unlawful for "any person, employer, labor organization or employment agency to discharge,

Court, arguing that the release did not bar her MCAD charge because it involved a "failure to hire" claim that did not accrue until she discovered, several months after she had left Bull, that the person who filled the vacant position was a younger woman. Without deciding the merits of Bull's claim, a Superior Court judge allowed Sahli's motion to dismiss without prejudice.[6]

As permitted by G. L. c. 151B, § 9, Sahli removed both of her charges from the MCAD and filed a complaint in the Superior Court alleging age discrimination in violation of G. L. c. 151B, § 4 (1B) (Count I), retaliation in violation of G. L. c. 151B, § 4 (4) (Count II), and interference with a protected right in violation of G. L. c. 151B, § 4 (4A) (Count III). Following discovery, both parties moved for summary judgment and, on March 16, 2001, a judge allowed Bull's motion on all counts. She ruled that the undisputed fact that the person who filled the vacant position was more qualified than Sahli defeated her discrimination claim. She also ruled that Sahli's retaliation claim failed because Sahli could not show that she suffered any "adverse employment consequence" as a result of filing her MCAD charge, and that her interference claim failed because the filing of a lawsuit did not rise to the level of "threats, intimidation or coercion" necessary to violate § 4 (4A). Bull then filed a motion for costs, which was allowed.[7]

Sahli appealed the summary judgment rulings on her claims of retaliation (Count II), and interference (Count III). She also appealed from the allowance of the motion for costs.[8] We transferred the case here on our own motion. We conclude that

expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five."

General Laws c. 151B, § 4 (4A), provides that it is unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter."

Claims under G. L. c. 151B, §§ 4 (4) and 4 (4A), are often referred to interchangeably as claims for retaliation. For clarity and better consistency with their apparent purposes, we will refer to the § 4 (4) claim as a claim of retaliation and the § 4 (4A) claim as a claim of interference.

[6]The record does not include any information about the basis for the dismissal.

[7]Bull sought and was awarded $1,629.20 in costs.

[8]Sahli did not appeal from the judgment on her claim of age discrimination (Count I). A finding of liability on a retaliation claim is not conditioned on a

Bull's filing of a complaint in the Superior Court for declaratory relief did not constitute an act of retaliation or interference violative of G. L. c. 151B, § 4 (4), or G. L. c. 151B, § 4 (4A), and therefore affirm the judge's allowance of Bull's motion for summary judgment, although on different grounds. *GTE Prods. Corp.* v. *Stewart*, 421 Mass. 22, 36 (1995). We also affirm the allowance of Bull's motion for costs.[9]

2. *Discussion.* Retaliation claims under G. L. c. 151B, § 4 (4), and interference claims under G. L. c. 151B, § 4 (4A), constitute separate and independent causes of action. See *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 121 (2000). Sahli contends that Bull violated both § 4 (4) and § 4 (4A), by filing the complaint for declaratory relief which forced her to defend herself in a separate litigation, incur additional attorney's fees, and fear the loss of her severance pay.

The threshold question we must decide is whether the filing of a lawsuit by a corporate employer seeking a declaration of its rights, duties, and obligations under a contract entered into with one of its employees can constitute an act violative of the retaliation and interference provisions of G. L. c. 151B. To resolve this question, we must balance the constitutional right to seek judicial resolution of disputes under the First Amendment to the United States Constitution[10] and art. 11 of the Massachusetts

---

finding of liability on the underlying claim of discrimination. See, e.g., *Bain* v. *Springfield*, 424 Mass. 758, 765 (1997).

[9]We acknowledge an amicus brief from the Attorney General. The brief explained that the Attorney General, along with the Equal Employment Opportunity Commission, filed a complaint against Bull in the United States District Court for the District of Massachusetts under the Older Worker Benefit Protection Act, 29 U.S.C. § 626 (2000), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (2000). See *Commonwealth* v. *Bull HN Info. Sys.*, 16 F. Supp. 2d 90 (D. Mass. 1998); *Commonwealth* v. *Bull HN Info. Sys.*, 143 F. Supp. 2d 134 (D. Mass. 2001). A Federal judge ruled that the releases Bull had its employees sign in 1995, presumably including the release that Sahli signed, were invalid under Federal law. There has been no ruling as to the validity of those releases under Massachusetts law. Sahli has not contested the validity of the release in this proceeding.

[10]The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." It applies to the

Declaration of Rights[11] against the statutory right under G. L. c. 151B to seek redress for allegations of discrimination without fear of retaliation for or interference with the exercise of that right.

We had occasion to balance similar interests in *Bain* v. *Springfield*, 424 Mass. 758 (1997) (*Bain*). In that case, a newspaper article described the plaintiff's allegations of discriminatory hiring practices in city government.[12] The same article also reported the mayor's response to the allegations, which included his belief that the plaintiff's complaints were " 'baseless,' 'meritless,' and 'an example of someone trying to manipulate the civil rights laws for personal gain.' " *Id.* at 760. The plaintiff filed suit, alleging that the mayor's comments, among other things, constituted retaliation under G. L. c. 151B against her for having voiced concerns about the city's hiring practices. *Id.* at 761, 765-766.

Balancing the plaintiff's interest in remedying discrimination with the mayor's First Amendment right to free speech, we concluded:

> "[W]e most emphatically cannot countenance as an instance of retaliation . . . the mayor's response in the local newspaper to the charges against him. The newspaper quoted Bain's serious and damaging charges against the mayor, an elected official. He was entitled to respond in the same forum, to defend himself and to state what political judgments seemed appropriate so long as they were not defamatory — which these were not. . . . The interest in remedying discrimination is weighty but not so weighty as to justify what amounts to a restriction on core political speech."

legislative power of the States through the Fourteenth Amendment to the United States Constitution. See *Wallace* v. *Jaffree*, 472 U.S. 38, 49 & n.32 (1985).

[11]"Every subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

[12]The *Bain* plaintiff set forth her allegations of discrimination in a letter that she sent to her immediate city supervisor and the city's affirmative action officer. *Bain* v. *Springfield*, *supra* at 759-760.

*Id.* at 766-767. Consistent with this reasoning, we conclude in the instant case that, although the interest in remedying discrimination is weighty, it is not so weighty as to justify what amounts to an absolute restriction on an employer's right to petition the courts.

The United States Supreme Court has recognized the right to petition the government, including the courts, as one of "the most precious of the liberties safeguarded by the Bill of Rights," *United Mine Workers* v. *Illinois Bar Ass'n*, 389 U.S. 217, 222 (1967), implied by the "very idea of a government, republican in form," *United States* v. *Cruikshank*, 92 U.S. 542, 552 (1875). See *Pinnick* v. *Cleary*, 360 Mass. 1, 11-12 (1971) (art. 11 "is clearly directed toward the preservation of procedural rights and has been so construed"). The Court has protected the right to petition "whenever it is genuine, not simply when it triumphs." *BE & K Constr. Co.* v. *NLRB*, 536 U.S. 516, 532 (2002) (*BE & K*). Thus, in the antitrust context, the Court has held that unless petitioning activity is both objectively and subjectively a "sham," it is immune from antitrust liability. *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). And in the labor context, the Court has held that the First Amendment protects "[t]he filing and prosecution of a well-founded lawsuit [from being] enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [National Labor Relations] Act." *Bill Johnson's Restaurants, Inc.* v. *NLRB*, 461 U.S. 731, 743 (1983).

The right to petition is not, however, an absolute right. For example, "baseless" or "sham" litigation is not protected by the First Amendment. See *Eastern R.R. Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961) (*Noerr*). See also *BE & K, supra* at 531 ("our holdings [have] limited regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose" [emphasis in original]). "Sham" litigation has been defined in the antitrust context as litigation that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and in which the litigant's subjective motivation is

" 'to interfere directly with the business relationships of a competitor' . . . through the 'use [of] the governmental *process* — as opposed to the *outcome* of that process — as an anticompetitive weapon'" (emphasis in original). *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc., supra* at 60-61, quoting *Noerr, supra* at 144, and *Columbia* v. *Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 380 (1991).

The United States Supreme Court recently granted certiorari to reexamine the scope of the right to petition when it considered whether the National Labor Relations Board (NLRB) could "impose liability on an employer for filing a losing retaliatory lawsuit, even if the employer could show the suit was not objectively baseless." *BE & K Constr. Co.* v. *NLRB,* 534 U.S. 1074 (2002). The employer (BE & K) had filed a series of unsuccessful complaints in Federal court against several unions, alleging that they had attempted to delay a construction project because BE & K's employees were not unionized. *BE & K, supra* at 520-522. The unions responded by lodging complaints against BE & K with the NLRB, alleging that BE & K had violated the antiretaliation provision of the National Labor Relations Act (NLRA).[13] *Id.* at 522. The NLRB agreed, deciding that BE & K's lawsuit was not meritorious and "had been unlawfully motivated because it was directed at protected conduct' and 'necessarily tended to discourage similar protected activity,' and because petitioner admitted it had filed suit 'to stop certain [u]nion conduct which it believed to be unprotected.' " *Id.* at 523. Based on these conclusions, the NLRB concluded that BE & K had violated the NLRA, and ordered BE & K "to cease and desist from prosecuting such suits and to post notice to its employees . . . promising not to pursue such litigation in the future." *Id.* The United States Court of Appeals for the Sixth Circuit found substantial evidence to support the NLRB's conclusions. *Id.* at 523-524.

The Supreme Court reversed, concluding that "unsuccessful but reasonably based suits" fall within the scope of First Amend-

---

[13]See 29 U.S.C. §§ 157, 158(a)(1) (2000) (employers prohibited from restraining, coercing, or interfering with employees' exercise of rights related to self-organization, collective bargaining, and other activities protected by Federal law).

ment protection. *Id.* at 536. In support of its decision, the Court rejected the NLRB's view of a retaliatory lawsuit — "one 'brought with a motive to *interfere* with the exercise of protected [NLRA] rights' " — because that definition "broadly covers a substantial amount of genuine petitioning." *Id.* at 533. The Court decided that if an employer's belief that certain conduct is illegal "is both subjectively genuine and objectively reasonable, then declaring the resulting suit illegal affects genuine petitioning." *Id.* at 533-534. The Court concluded that "[a]s long as a plaintiff's *purpose* is to stop conduct he reasonably believes is illegal, petitioning is genuine both objectively and subjectively" (emphasis in original). *Id.* at 534.[14] Where the only evidence of retaliatory purpose was the bringing of a reasonably based but unsuccessful lawsuit, combined with testimony that the employer disliked the unions, the Court held that finding the lawsuit to be violative of Federal law barring employers from interfering with, restraining, or coercing employees in the exercise of their rights, unduly burdened the employer's First Amendment right to petition.[15]

Applying these principles to G. L. c. 151B, we decline to read § 4 (4) and § 4 (4A) as reaching all reasonably based but unsuccessful lawsuits brought in response to the filing of a discrimination claim. Cf. *BE & K, supra* at 536. When an employer files a complaint seeking a declaration of its rights, duties, and obligations under a contract that it entered into with an employee, and the lawsuit has a legitimate basis in law and

---

[14]The Court also noted that "nothing in our holding today should be read to question the validity of common litigation sanctions imposed by courts themselves — such as those authorized under Rule 11 of the Federal Rules of Civil Procedure — or the validity of statutory provisions that merely authorize the imposition of attorney's fees on a losing plaintiff." *BE & K Constr. Co.* v. *NLRB*, 536 U.S. 516, 537 (2002) (*BE & K*). We agree.

[15]In a concurring opinion, Justice Breyer noted that the Court did not preclude a finding of liability in "*other circumstances* in which the evidence of 'retaliation' or antiunion motive might be stronger or different, showing, for example, an employer, indifferent to outcome, who intends the reasonably based but unsuccessful lawsuit simply to impose litigation costs on the union," or showing the lawsuit brought by the employer to be "part of a broader course of conduct aimed at harming unions and interfering with employees' exercise of their rights" (emphasis in original). *BE & K, supra* at 539 (Breyer, J., concurring in part and concurring in the judgment, with whom Stevens, Souter, & Ginsburg, JJ., join).

fact, the employer does not violate the provisions of either § 4 (4) or § 4 (4A), absent evidence that the employer's purpose is other than to stop conduct it reasonably believes violates the terms of the contract. Cf. *BE & K, supra* at 533-534. We now apply this holding to the case before us.

We first consider whether Bull's complaint for declaratory relief had a legitimate basis in law. General Laws c. 231A, § 1, allows courts to "make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings." The purpose of this statute is to provide a plaintiff relief from uncertainty and insecurity with respect to rights, duties, status, and other legal relations. See, e.g., *Oxford* v. *Oxford Water Co.,* 391 Mass. 581, 584-585 (1984). The determination of contractual rights is a proper subject of a declaratory judgment proceeding. See, e.g., *Pitman* v. *J.C. Pitman & Sons,* 324 Mass. 371 (1949) (determining effect of general release signed in conjunction with sale of business). See also *Billings* v. *Fowler,* 361 Mass. 230, 234 (1972) (c. 231A "was intended to expand, at least in the discretion of the court, prior provisions for the interpretation of written instruments"); *School Comm. of Cambridge* v. *Superintendent of Schs. of Cambridge,* 320 Mass. 516, 518 (1946) ("One of the benefits of the declaratory procedure is that it does not require one to incur the risk of violating some term of a contract or of invading some right of the other, even if done in good faith, before he may have relief"). Thus, Bull's complaint seeking declaratory relief had a legitimate basis in law.[16]

We next consider whether there was a legitimate basis in fact to support Bull's complaint. Bull's one-count complaint sought a declaration from the court regarding its rights under the terms of the release:

---

[16]We reject Sahli's contention that Bull had "no legitimate right" to file its complaint because it had not "exhausted its administrative remedies." See G. L. c. 151B, § 9 ("as to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned"). Bull was not obliged to request that the MCAD issue a declaration as to its contractual rights, duties, and obligations.

"Sahli released and covenanted not to sue Bull for any current or prior claims arising out of her employment with Bull or her termination from Bull. At the time she signed the Release Agreement, she knew she was being terminated and so acknowledged in the Release Agreement. The essence of her claim is that she was terminated rather than being relocated into an open position pursuant to an alleged policy or practice of Bull HN."

Bull asserted that "[a] real, substantial, and justiciable controversy exists between Bull HN and Sahli concerning whether she has breached her Release Agreement with Bull HN and concerning the parties' respective rights and obligations under the General Release and Severance Agreement."

Sahli contended that there should never have been any confusion about the basis of her "failure-to-hire" claim. We disagree. The correspondence between Sahli's counsel and Bull preceding the filing of the MCAD charge,[17] the description of the claim set out in the MCAD charge itself, and the affidavits attached to the charge[18] demonstrate that as originally filed, Sahli's MCAD charge included discrimination claims based both on Bull's failure to relocate her into the vacant position instead of laying her off (a claim likely covered by the release), and on Bull's failure to hire her into the vacant position after she had been laid off (a claim likely not covered by the release). Even if viewed in the light most favorable to Sahli, the basis for her

---

[17]In a September 11, 1995, letter to Bull, Sahli's attorney outlined Sahli's discrimination claims. The letter stated: "[T]he reason [Sahli] was not relocated into the vacant Human Resources Generalist II position rather than being laid off . . . is because of her age." The letter also stated: "Sahli has also suffered the emotional trauma of being laid off rather than relocated into a vacant position for which she was more than amply qualified."

[18]In the affidavit attached to the first MCAD charge, Sahli asserted: "Bull's policy and practice in the event of a lay-off is to place a laid-off employee in another vacant position within the company, where possible." In the same affidavit, Sahli also asserted: "Bull failed to follow its policy and practice in my case of relocating laid-off employees into vacant positions within the company and failed to hire me for the [position] because of my age."

Sahli's former supervisor signed an affidavit in which she attested: "It was Bull's policy and practice to reassign employees into vacant positions within the company to avoid lay off, where possible. . . . For example, when faced with an impending reduction in force, Human Resources Department personnel have been placed in generalist positions within the Human Resources Department, even where they had little or no generalist experience."

original charge was unclear. To the extent that this lack of clarity could have reasonably led Bull to believe that part or all of Sahli's MCAD charge was barred by the release, there was a legitimate basis in fact to support the filing of Bull's complaint.

Finally, there is no evidence that Bull's purpose in bringing the lawsuit was anything other than to stop conduct it reasonably believed to be violative of the terms of the release.[19] The only evidence of retaliatory purpose was the filing of the lawsuit itself. As the Supreme Court held in *BE & K, supra*, such evidence is inadequate, as a matter of law, to justify any burden on Bull's constitutional right to petition the courts. The filing of Bull's complaint did not violate § 4 (4) or § 4 (4A) of G. L. c. 151B, and summary judgment was properly granted.[20]

3. *Award of costs.* The Superior Court judge properly allowed Bull's motion for costs. General Laws c. 261, § 1, states: "In civil actions the prevailing party shall recover his costs, except as otherwise provided." Rule 54 (d) of the Massachusetts Rules of Civil Procedure, as appearing in 382 Mass. 821 (1980), states that: "Except when express provision therefor is made either in a statute of the Commonwealth or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Contrary to Sahli's contention, G. L. c. 151B does not preclude an award of costs to a prevailing defendant. See G. L. c. 151B, § 9 ("If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust").

*Judgment affirmed.*

---

[19]As of the date Bull filed its lawsuit, there was no ruling concerning any defect that might invalidate the release that Sahli had signed. Rulings in Federal court litigation concerning such defects were not issued until several years later. See note 9, *supra.*

[20]Bull argues that we should affirm the Superior Court judge's decision based on G. L. c. 231, § 59H (the "anti-SLAPP" statute). This issue was not raised below and is not properly before us.