SLIVE & HANNA, INC. vs. MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, 100 Mass. App. Ct. 432

 
 SLIVE & HANNA, INC. [Note 1] vs. MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & another. [Note 2]

100 Mass. App. Ct. 432
 May 5, 2021 - October 19, 2021

Court Below: Superior Court, Suffolk County
Present: Rubin, Sacks, & Ditkoff, JJ.

 

Massachusetts Commission Against Discrimination. Anti-Discrimination Law, Employment. Employment, Retaliation. Constitutional Law, Right to petition government. Evidence, Settlement offer.

The Massachusetts Commission Against Discrimination did not err in concluding that an employer engaged in unlawful retaliatory conduct under G. L. c. 151B, § 4, against one of its former employees who had filed a discrimination claim against it, where, even if the employer's prior successful lawsuit to collect on the employee's debt to the employer had been protected under the First Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights and thus could not be the basis for the employee's claim of retaliation, the employer's actions in using its extrajudicial seizure of the employee's motor vehicle to pressure the employee to drop his discrimination claim were not a bona fide attempt to collect on the judgment and thus were not constitutionally protected. [436-441]

In a proceeding before the Massachusetts Commission Against Discrimination, a party's statements were not inadmissible as part of settlement negotiations, where they were not used to prove or disprove the validity of a claim that existed or was contemplated at the time the statements were made. [441-442]

CIVIL ACTION commenced in the Superior Court Department on November 9, 2018.

 The case was heard by Debra A. Squires-Lee, J., on motions for judgment on the pleadings, and motions for reconsideration and for attorney's fees and costs were also heard by her.

 Douglas W. Salvesen for the plaintiff.

 Lana Sullivan for Harold B. Murphy.

 Caitlin A. Sheehan for Massachusetts Commission Against Discrimination.

 DITKOFF, J. After obtaining a judgment against its former employee Richard Shanahan, Slive & Hanna, Inc. (employer), seized

 Page 433 

 Shanahan's minivan, used by his ex-wife. Rather than sell the minivan to satisfy the judgment, the employer demanded that the ex-wife convince Shanahan to drop his disability discrimination claim pending before the Massachusetts Commission Against Discrimination (MCAD). When this failed, the employer returned the minivan (after the ex-wife's parents paid the storage fees). The employer appeals from the judgment entered following the decision of a Superior Court judge denying its motion for judgment on the pleadings in part and affirming the conclusion of MCAD that these actions constituted unlawful retaliation against Shanahan for filing a discrimination claim. We conclude that, even if there is a constitutional right to levy on a writ of execution -- a question we do not decide -- it does not extend to abuse of the levying process to extort a person to drop a discrimination claim. Further concluding that the statements of the principal of the employer were not protected as settlement discussions, we affirm the judgment.

 1. Background. Alex Slive and Douglas Hanna are the principals of the employer. Shanahan began working as a carpenter for the employer and eventually became a job supervisor. The employer had loaned several of its employees money in the past. On occasion, the employer would send monthly statements to the employees who had borrowed money, reminding them of their loans. The employer loaned Shanahan approximately $8,000, some of which assisted him in making his home mortgage payments. He received monthly notices regarding this loan. Shanahan admitted that he did not make any payments on the loan.

 In early November 2006, after Shanahan was absent from his job for three consecutive days without proper notification to the employer, the employer terminated him. When Shanahan was terminated, Slive reminded him that he owed the employer $8,000 that had been previously loaned to him.

 On September 14, 2007, Shanahan filed a complaint with the MCAD alleging discrimination by the employer. [Note 3] On October 30, 2007, the employer filed a complaint in the District Court against Shanahan seeking $8,050 in unpaid loans, overdrawn vacation time, and healthcare premiums. [Note 4] Shanahan did not file 

 Page 434 

an answer or appear in the District Court action, and a default judgment entered against him.

 On March 17, 2008, the employer obtained a writ of execution against Shanahan. In November 2018, a week before Thanksgiving, using the writ of execution, the employer directed deputy sheriffs to seize a minivan owned by Shanahan. [Note 5] Although Shanahan owned the minivan, his ex-wife used it to transport their three daughters. When the ex-wife saw that the minivan was towed, she called Shanahan "in a panic," and they determined that its seizure was likely the result of the unpaid loans.

 The ex-wife called Slive the next day, "hysterical" (in her words), to tell him she needed the minivan to transport her children. According to the ex-wife, Slive explained to her that Shanahan owed the employer money and that it was Slive's right to seize the minivan. Slive told the ex-wife that, "if she wanted the car back, Shanahan should drop his MCAD claim." "He ultimately presented her with an ultimatum that he would release the vehicle only if she convinced [Shanahan] to drop his MCAD law suit." Because of this, Shanahan "was under pressure from his ex-wife to drop his MCAD claim and he suffered the wrath of his family and his in-laws, who all put pressure on him to resolve the matter."

 Despite Slive's pressure, Shanahan did not drop his MCAD claim. Nonetheless, the employer did not sell the minivan and apply the proceeds to satisfy the judgment it had obtained. Instead, after "almost a month and several negotiations with attorneys and calls to the MCAD investigator," the employer returned the minivan to the ex-wife after her parents paid "a significant sum of money," mostly for storage fees. [Note 6] The MCAD hearing officer later found that Slive's actions in this regard "were undertaken with retaliatory motive to punish Shanahan for filing an MCAD complaint, to compel him to give up that claim, and to

 Page 435 

 deliberately chill his rights to proceed with the claim."

 After the minivan was returned, Shanahan added a claim to his pending MCAD case, alleging that the employer engaged in retaliation against him for filing the discrimination complaint by filing the District Court collection action and by seizing the minivan used by his ex-wife. [Note 7] Although the hearing officer found that Shanahan failed to show that the employer was motivated by a discriminatory intent in terminating his employment, she found that the retaliation claim had merit. [Note 8] The hearing officer awarded Shanahan, since replaced by the bankruptcy trustee, $25,000 in damages for emotional distress and assessed a $5,000 civil penalty against the employer. The emotional distress award appears to be based entirely on the effects of the pressure placed on Shanahan to drop his MCAD complaint following the seizure of the minivan.

 Both parties appealed to the full commission. The commission deferred to the hearing officer's factual findings and affirmed her award. The commission also awarded attorney's fees. The commission stated that, "[e]ven if the lawsuit itself was not retaliatory, the additional step of taking possession of a vehicle operated by [Shanahan's] former wife in execution of the default judgment against [Shanahan] appears to have been a spiteful action designed to pressure [Shanahan] to drop his discrimination suit."

 The Superior Court judge, ruling on the parties' cross motions for judgment on the pleadings, found "both that the Lawsuit had a good faith basis in law and fact and [the employer's] purpose was to seek redress for its legal rights, i.e., get its money back," and as such, that "the filing of the Lawsuit could not be retaliatory." Conversely, the judge found that, "although [the employer] could have lawfully executed the judgment [it] obtained, as [it] did in placing a lien on Shanahan's home, [there was] no error in the MCAD's conclusion that [the employer's] conduct in taking possession of the van and then trying to trade its right to execute

 Page 436 

 for the dismissal of Shanahan's MCAD complaint was retaliatory conduct prohibited by [G. L. c.] 151B." Ultimately, the judge affirmed the MCAD award in its entirety. [Note 9] This appeal followed.

 2. Standard of review. "The standards of judicial review set forth in the Administrative Procedure Act, G. L. c. 30A, § 14, . . . regulate judicial review of a final order of the MCAD." Sy v. Massachusetts Comm'n Against Discrimination, 79 Mass. App. Ct. 760, 763 (2011). See G. L. c. 151B, § 6. General Laws c. 30A, § 14 (7), "requires us to determine whether a party's substantial rights were prejudiced because the decision was in violation of constitutional provisions, based on an error of law or unlawful procedure, or unsupported by substantial evidence." 15 LaGrange St. Corp. v. Massachusetts Comm'n Against Discrimination, 99 Mass. App. Ct. 563, 567-568 (2021). "Like judicial review of final decisions of other agencies, review of decisions of the MCAD requires 'due weight [be given] to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.'" Sy, supra at 763-764, quoting G. L. c. 30A, § 14 (7). "In reviewing an agency decision, we exercise de novo review on questions of law, giving 'substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its . . . enforcement.'" Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 512 (2019), quoting Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006). "We review the judge's decision de novo." 15 LaGrange St. Corp., supra at 568.

 3. Constitutional right to petition. General Laws c. 151B, § 4 (4), "makes it unlawful for 'any person . . . to discharge, expel or otherwise discriminate against any person because he has . . . filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, § 5],' [and] § 4 (4A) makes it unlawful for 'any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this 

 Page 437 

chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.'" Psy-Ed Corp. v. Klein, 459 Mass. 697, 706 (2011). [Note 10] This prohibition, however, is limited by an employer's right to petition the courts under the First Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights. See Sahli v. Bull HN Info. Sys., Inc., 437 Mass. 696, 700-702 (2002).

 "The United States Supreme Court has recognized the right to petition the government, including the courts, as one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" Sahli, 437 Mass. at 702, quoting United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967). "[I]n the labor context, the [United States Supreme] Court has held that the First Amendment protects '[t]he filing and prosecution of a well-founded lawsuit [from being] enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [National Labor Relations] Act.'" Sahli, supra, quoting Bill Johnson's Restaurants, Inc. v. National Labor Relations Bd., 461 U.S. 731, 743 (1983).

 "But the 'right to petition is not . . . an absolute right.'" Psy-Ed Corp., 459 Mass. at 709, quoting Sahli, 437 Mass. at 702. "The filing of 'sham' or 'baseless' litigation, as distinct from 'unsuccessful but reasonably based suits,' is not a constitutionally protected right." Psy-Ed Corp., supra, quoting Sahli, supra at 702-704. A lawsuit is a sham when it is both objectively baseless and also "subjectively motivated by the litigant's desire to use the governmental process -- as opposed to its outcome -- to influence or harm the target of the litigation." Psy-Ed Corp., supra, quoting Sahli, supra at 702-703. Conversely, "[t]he Court has protected the right to petition 'whenever it is genuine, not simply when it triumphs.'" Sahli, supra at 702, quoting BE & K Constr. Co. v. National Labor Relations Bd., 536 U.S. 516, 532 (2002). The right to petition does "not disable the government from taking reasonable steps to ensure that such [a] right[] [is] not exercised in a manner which infringes on the legitimate rights of

 Page 438 

 other citizens." Brookline v. Goldstein, 388 Mass. 443, 450-451 (1983) (town officials and employees entitled to injunction prohibiting continued harassment at homes and places of employment, but injunction "reaches too far" where it prohibits defendant "from attending public meetings, [from] reporting emergencies to the appropriate town officials, or from inquiring as to the hours of town facilities").

 Notably, "ill will is not uncommon in litigation." BE & K Constr. Co., 536 U.S. at 534. "As long as a plaintiff's purpose is to stop conduct he reasonably believes is illegal, petitioning is genuine both objectively and subjectively." Id. Considering the holding in BE & K Constr. Co., the Supreme Judicial Court held in Sahli that, "[w]hen an employer files a complaint seeking a declaration of its rights, duties, and obligations under a contract that it entered into with an employee, and the lawsuit has a legitimate basis in law and fact, the employer does not violate the provisions of either [G. L. c. 151B,] § 4 (4) or § 4 (4A), absent evidence that the employer's purpose is other than to stop conduct it reasonably believes violates the terms of the contract." Sahli, 437 Mass. at 704-705, 707 (holding this standard met where "only evidence of retaliatory purpose was the filing of the lawsuit itself"). [Note 11] Accordingly, we assume, without deciding, that a successful lawsuit is constitutionally protected even if motivated by retaliatory animus and thus assume, as the Superior Court judge found, that the employer's successful lawsuit to collect on Shanahan's debt was constitutionally protected and could not be the basis of a retaliation claim.

 Whether the constitutional right to petition a court for a redress extends to extrajudicial acts to collect on a judgment is unsettled. Certainly, had the employer invoked the jurisdiction of the courts to enforce the writ of execution pursuant to supplementary process, G. L. c. 224, there would be no question that such a lawsuit would be protected by the constitutional right to petition. In that situation, however, a judge would determine what property, if any, should be used to satisfy a judgment. See G. L. c. 224, § 16. When levying on a writ of execution, the creditor directs which property will be seized. See G. L. c. 235, § 29. (Of course, had a court been involved, it is inconceivable that the judge would have

 Page 439 

 allowed the process to be used to pressure Shanahan into relinquishing his MCAD complaint.)

 Here, however, the employer chose to proceed by levying on a writ of execution. Levying on a writ of execution is a creature of statute. See G. L. c. 235, § 22 (setting out forms of execution); Mass. R. Civ. P. 69, 365 Mass. 836 (1974) ("The procedure on execution, in proceedings on and in aid of execution shall be in accordance with applicable statutes" [emphasis added]). "After the entry of a judgment, 'the law awards the execution. . . . There is no judicial discretion to be exercised on the subject; the party may demand it of right, within the limitations as to time prescribed by the statute.'" First Nat'l Bank of Boston v. Bernier, 50 Mass. App. Ct. 756, 758 (2001), quoting Boston v. Santosuosso, 308 Mass. 202, 206 (1941). "Generally, executions under [G. L. c. 235, § 17,] are issued not by express judicial order but by ministerial action of the court's officers. . . . Even when a court orders a new execution to issue where an execution is returned unsatisfied to any extent, as permitted by the last sentence of the first paragraph of § 17, the court's action is ministerial." First Nat'l Bank of Boston, supra at 759 n.8. "Enforcing an execution on a judgment is a ministerial, rather than a discretionary, act." Cady v. Marcella, 49 Mass. App. Ct. 334, 339 (2000).

 General Laws c. 235, far from providing a broad right to execution of a judgment, imposes a number of restrictions, which in practice often means that a judgment cannot be executed at all. A writ of execution may not issue until appellate review is exhausted. G. L. c. 235, § 16. The time for issuing a writ of execution is limited to "one year after the party is first entitled to take it out." G. L. c. 235, § 17. See First Nat'l Bank of Boston, 50 Mass. App. Ct. at 758 ("We have found no case, nor has one been cited to us, that suggests there are any exceptions to the strict ministerial observance of the one-year limitation during which an original execution may be obtained"). Any successive execution "shall not issue after the expiration of five years from the return day of that which preceded it," and shall be in effect for five years from the date issued unless otherwise satisfied or discharged. G. L. c. 235, § 17.

 Many forms of property are exempt from seizure on a writ of execution. For example, $2,500 in cash, $500 per month for utilities, and the first eighty-five percent of a person's gross earnings

 Page 440 

 are exempt from seizure. G. L. c. 235, § 34, First, Fifteenth. [Note 12] Household necessities, such as bedding, certain appliances, furniture, groceries, and a sewing machine are exempt from seizure. G. L. c. 235, § 34, First, Second, Seventh, Twelfth. Tools necessary for carrying on a business are exempt from seizure. G. L. c. 235, § 34, Fifth, Ninth. A debtor's first $1,000 of personal property is exempt from seizure. G. L. c. 235, § 34, Seventeenth. Up to $500,000 of the real estate, or $2,500 per month for rent, is exempt from seizure. G. L. c. 188, § 3 (b). G. L. c. 235, § 34, Fourteenth. Even automobiles may be exempt from seizure if "necessary for the debtor's personal transportation or to secure or maintain employment, not exceeding $7,500 of wholesale resale value." G. L. c. 235, § 34, Sixteenth. [Note 13]

 Once property is seized on execution, it must be kept by the seizing officer for at least four days, and "shall be sold by public auction within fourteen days next after the seizure," unless the debtor otherwise satisfies the execution beforehand, G. L. c. 235, § 36, or the auction is postponed "for the interest of all persons concerned," G. L. c. 235, § 39. The officer must give notice of the time and place of the sale by posting notices in a public place in the municipality where the sale is taking place or by publishing the information in a newspaper where the debtor had a last and usual place of residence at least forty-eight hours before the sale. G. L. c. 235, § 37. The proceeds of the sale must be applied to the judgment debt (after charges), and a return must be made to the court so that the debtor is credited on any successive writ of execution. G. L. c. 235, §§ 17, 42, 43. [Note 14]

 We assume, without deciding, that levying on a writ of execution without the involvement of a judicial officer is constitutionally protected when it is a bona fide attempt to collect on a judgment. [Note 15] Nonetheless, just as a lawsuit is objectively baseless where "no reasonable litigant could realistically expect success

 Page 441 

 on the merits," Psy-Ed Corp., 459 Mass. at 709, quoting Sahli, 437 Mass. at 702-703, an act of levying is objectively baseless where the creditor could not realistically expect it to be successful in collecting on a judgment. Similarly, just as a lawsuit is not subjectively genuine unless its "purpose is to stop conduct [the plaintiff] believes is illegal," Sahli, supra at 704, quoting BE & K Constr. Co., 536 U.S. at 534, an act of levying is not subjectively genuine unless its purpose is to collect on a judgment (regardless of whether the creditor has other purposes as well).

 Here, the hearing officer found that the employer's actions "were undertaken to compel [Shanahan] to drop his MCAD claim," not to satisfy the judgment. [Note 16] This "adequately describes extortion," which is not protected petitioning activity. Haverhill Stem LLC v. Jennings, 99 Mass. App. Ct. 626, 634 (2021). This finding was well supported by the record. Rather than sell the minivan and apply the proceeds to the judgment, the employer demanded that Shanahan's ex-wife convince him to drop his MCAD claim. When this failed, the employer returned the minivan to the ex-wife, requiring her parents to pay storage fees without reducing the judgment debt. Similarly, although the employer could have levied on the writ of execution in a manner that would have had a realistic expectation of collecting on the judgment, the employer instead held the minivan while demanding that the MCAD claim be dropped and released the minivan (without satisfying the judgment) once it became clear that this gambit had failed. Based on the hearing officer's findings, the employer's actions in using the seizure of the minivan to pressure Shanahan to drop his discrimination claim were not a bona fide attempt to collect on the judgment and thus were constitutionally unprotected. Extortion is not protected petitioning activity.

 4. Settlement discussions. [Note 17] The employer asserts that Slive's statements to the ex-wife were inadmissible as part of settlement

 Page 442 

 negotiations. We assume, without deciding, that the evidentiary rule against the admission of settlement negotiations in civil cases applies to agency proceedings in the MCAD. [Note 18] "As is well established, evidence of a compromise offer is inadmissible to prove or disprove the validity or amount of a disputed claim." Filbey v. Carr, 98 Mass. App. Ct. 455, 457 (2020). Accord Mass. G. Evid. § 408(a) (2021). Here, Slive's statements were not used to prove or disprove the validity or value of the claim of discrimination, which was the only MCAD claim that existed or, as far as the record shows, was contemplated at the time that the statements were made. [Note 19] Consequently, they are not inadmissible as evidence of a compromise offer. See Dahms v. Cognex Corp., 455 Mass. 190, 199 (2009) (in G. L. c. 151B case, employer's settlement offer properly introduced by employer to disprove retaliatory motive, as offer "was relevant for a purpose other than liability or damages on the MCAD claim about which the negotiations related"); Mass. G. Evid. § 408(b) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or other state of mind, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution"). [Note 20]

Judgment affirmed.

FOOTNOTES
[Note 1] Formerly known as S+H Construction, Inc. 

[Note 2] Harold B. Murphy, trustee of the bankruptcy estate of Richard Shanahan. 

[Note 3] Shanahan alleged that he was subjected to discrimination based on a hearing impairment he has had since birth, caused by a nerve loss. 

[Note 4] Prior to filing the complaint against Shanahan, the employer had never filed a civil action to recover unpaid employee loans. With the exception of one instance in which the employer filed a criminal complaint against an employee for misappropriation of funds, unpaid loans to employees would be written off and taken as a loss for tax purposes. 

[Note 5] Shanahan also owned a truck at the time, but the employer did not seek possession of that vehicle. The employer also placed a lien on the family home that Shanahan owned. 

[Note 6] Slive testified that he did not ask the ex-wife to pressure Shanahan and released the minivan to the ex-wife the day after she called. The hearing examiner did not credit this testimony. 

[Note 7] On September 9, 2013, after Shanahan had filed a petition for bankruptcy, the bankruptcy trustee, Harold B. Murphy, moved to be substituted as the complainant in the MCAD matter, and the motion was allowed. 

[Note 8] In her decision, the hearing officer wrote, "While I conclude that there was a basis in law and fact for the law suit to recover monies [the employer] had lent to Shanahan, I conclude the motive for filing the suit was not 'subjectively genuine' and that the lawsuit and [the employer's] actions thereafter were undertaken to compel him to drop his MCAD claim and in retaliation for his having filed the claim." 

[Note 9] At first, the judge ordered that the attorney's fee award would need to be reconsidered, as the bankruptcy trustee was no longer successful on both aspects of the retaliation claim. After the filing of cross motions for reconsideration, the judge affirmed the MCAD award in its entirety, finding that "[t]he aspect of the retaliation claim on which [the bankruptcy trustee] did not prevail (lawsuit) was 'sufficiently interconnected' with the aspect on which [the bankruptcy trustee] prevailed (execution) such that the fees cannot be parsed," quoting Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784, 792 (2007). The employer does not challenge this conclusion on appeal. 

[Note 10] As the attorney for the employer properly conceded at oral argument that the levy on the minivan was an adverse action (and the claim otherwise was not raised in the Superior Court), we need not address the employer's suggestion in its brief that Shanahan did not suffer any adverse action. 

[Note 11] "As the Supreme Court held in [BE & K Constr. Co.], such evidence is inadequate, as a matter of law, to justify any burden on [the employer's] constitutional right to petition the courts." Sahli, 437 Mass. at 707. 

[Note 12] If those wages are less than fifty times the applicable minimum wage, all of the wages are exempt. G. L. c. 235, § 34, Fifteenth. 

[Note 13] Additionally, unemployment benefits, G. L. c. 151A, § 36, workers' compensation benefits, G. L. c. 152, § 47, and Social Security benefits, 42 U.S.C. § 401, are, among several other benefits, exempt by law from payment orders. 

[Note 14] It bears mention that at oral argument counsel for the employer acknowledged that the employer did not challenge the validity of the limitations on execution set out in G. L. c. 235, and admitted that it is likely unlawful to execute in a way that is retaliatory and improper. 

[Note 15] "'[T]he right to petition extends to all departments of the Government,' and . . . '[t]he right of access to the courts is . . . but one aspect of the right of petition.'" BE & K Constr. Co., 536 U.S. at 525, quoting California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). 

[Note 16] The commission deferred to the hearing officer's findings, as is its duty when those findings are supported by substantial evidence. 804 Code Mass. Regs. § 1.23(1)(h) (1998). 

[Note 17] The employer's contention that Slive's statements to Shanahan's ex-wife fell within the litigation privilege is waived, as it was not raised in the Superior Court. See Jacobs v. Massachusetts Div. of Med. Assistance, 97 Mass. App. Ct. 306, 311 n.7 (2020) (where argument not raised below, "it has been waived"). In any event, the argument appears dubious at best. Cf. Gillette Co. v. Provost, 91 Mass. App. Ct. 133, 141-142 (2017) (litigation privilege inapplicable where statements were not themselves actionable but were offered as evidence that conduct was improperly motivated and thus actionable). 

[Note 18] "[A]gencies need not observe the rules of evidence observed by courts, but shall observe the rules of privilege recognized by law." G. L. c. 30A, § 11 (2). Although the employer repeatedly refers to settlement negotiations as privileged, we have found nothing suggesting that this principle is anything but a rule of evidence. See Mass. G. Evid. § 408 (2021). In any event, we need not decide this question. 

[Note 19] Rather, Slive's statements supported the retaliatory nature of the levy, a claim that did not exist nor was contemplated at the time of Slive's statements. 

[Note 20] The bankruptcy trustee requests an award of attorney's fees and costs relating to this appeal. Pursuant to G. L. c. 151B, § 9, "[i]f the court finds for the petitioner it shall . . . award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust." See Ciccarelli v. School Dep't of Lowell, 70 Mass. App. Ct. 787, 799 (2007) (awarding attorney's fees on appeal pursuant to G. L. c. 151B, § 9). Accordingly, the bankruptcy trustee may file an application for appellate attorney's fees and costs within fourteen days of the issuance of the rescript, and the employer shall have fourteen days within which to respond. See id. See also Fabre v. Walton, 441 Mass. 9, 10-11 (2004) (describing procedure on award of appellate attorney's fees and costs). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.